**CONE v. PARISH et al.**

No. 39.

District Court, N. D. Texas, Lubbock Division.

Feb. 12, 1940.

Crenshaw, Dupree & Milam, of Lubbock, Tex., for plaintiff, J. R. Cone.

Grisham & King, of Abilene, Tex., for defendant Mrs. Louis Hunter.

Grisham & Grisham, of Eastland, Tex., and E. L. Klett, of Lubbock, Tex., for defendant Aaron Cohen.

Bean, Evans & Bean, of Lubbock, Tex., for defendants Dr. Herbert C. Maxwell and Perna H. Crow.

Girand & Girand and Nelson & Brown, all of Lubbock, Tex., for defendant Mrs. Oda Parish.

Sanders & Scott, of Amarillo, Tex., for defendant Reid B. Scott.

Watkins & Mays, of Dallas, Tex., amicus curiae.

DAVIDSON, District Judge.

The plaintiff, J. R. Cone brings this suit to establish an interest in and to the minerals in and under the southeast quarter of Section 897, in Yoakum County, Texas.

Annie Miller is the common source of title. The plaintiff and five defendants assert various claims and overlapping claims and cross-actions, to the minerals as set forth in mineral deeds, oil leases, and also in the fee. I find:

(1) That the plaintiff's title is shown in the following instruments:

(a) Miller to Claywater, Claywater to Gus Jones.

(b) A deed of trust from Gus Jones to secure Oxford & Oxford on a note for $500.

(c) Settlement between Oxford and Gus Jones, in which the property is sold at foreclosure, bought in by Oxford, the northeast section retained by him under quitclaim deed.

(d) The southeast section reconveyed to Gus Jones by Oxford.

(e) Deed from Gus Jones to Tommye Jones.

(f) Mineral Deed from Tommye Jones to L. M. Hunter to one-half of the minerals in the southeast quarter.

(g) An oil and gas lease from Hunter to plaintiff J. R. Cone, conveying 7/8ths of the oil in a half interest of the southeast quarter.

(Note: The foregoing items, while placing a record title in the plaintiff to an interest in the minerals, are attacked by Oda Parish, Aaron Cohen, and other defendants.

(2) As to Aaron Cohen, I find:

(a) Deed, Gus Jones to Aaron Cohen to half of the minerals in the east half of the section.

(b) This mineral deed antedates the Oxford foreclosure.

(c) After the Oxford foreclosure, Gus Jones again acquired title from Oxford to the southeast quarter of the section.

(3) As to the defendant Hunter, I find:

(a) Deed, Tommye Jones to L. M. Hunter, half of minerals in southeast quarter.

(b) Oil Lease, Hunter to plaintiff J. R. Cone for 7/8ths of the minerals in the Hunter interest.

(c) In the oil lease, Hunter retained a 1/8 as royalty.

(4) As to the Maxwell claim, I find:

(a) Maxwell claims, through Hunter, an interest in the Hunter minerals.

(b) A royalty deed from Maxwell to Hunter, which contains the following recitation:

"And said above described lands being now under an oil and gas lease originally

executed in favor of L. M. Hunter and now held by Leroy Adams, it is understood and agreed that this sale is made subject to said lease, but covers and includes ¼ of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease."

"It is agreed and understood that none of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Herbert C. Maxwell, and in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event the lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by Tommye Jones and L. M. Hunter, each owning one-half (½) interest in all oil, gas and other minerals in and upon said land, together with ½ interest in all future rents."

(c) I find that Maxwell assigned a portion of his interest to Perna H. Crow.

(5) As to the defendant Reid Scott, I find:

(a) Deed of trust from Tommye Jones to Reid B. Scott, dated January 12, 1928.

(b) A foreclosure by Reid B. Scott, under the deed of trust to the said S. H. Carter of 160 acres. (Reid Scott thus received the title to the fee and whatever interest in the royalty that Tommye Jones had left, if any, after her conveyance to Hunter.)

(6) As to the defendant Oda Parish, I find:

(a) She is claiming the equity in the entire east half of the section and that the title that Gus Jones received from Claywater was in trust for herself.

(b) Gus Jones was her son.

(c) That she prompted her son to trade and encumber the farm in Crosby County for the east half of section 897, in Yoakum County, also encumbered.

(d) That in 1926, some two years after the Yoakum County deal, Gus Jones, being in some trouble, gave his note to Oxford & Oxford of Plainview, Texas, for a fee in the amount of $500. That this note was secured by Deed of Trust executed by said Gus Jones on the southeast quarter of the land in controversy.

(e) That Bledsoe & Spencer had levied an attachment on the Yoakum County land, treating it as the property of the defendant Oda Parish, the mother of the said Gus Jones. That no action had been taken under said attachment and the suit had not been tried.

(f) I find that the said Oda Parish told Oxford & Oxford, upon inquiry by them, that she made no claim to the land, that it belonged to Gus.

(g) That Oxford & Oxford posted notice of sale under their deed of trust, and between the date of posting and the date of sale, the courthouse of Yoakum County at Plains, Texas, was burned down; that the notice of sale was posted at two other places in the county.

(h) I find that the defendant, Oda Parish, procured an affidavit from her son-in-law, Gill, and delivered it to Oxford & Oxford, wherein Gill stated that to his knowledge Mrs. Oda Parish had not asserted any claim to the land in controversy. Mrs. Oda Parish took this affidavit and delivered it to Oxford & Oxford as evidence of her son's title to the land, and as coming from a disinterested source.

(i) Gus Jones always claimed, in all of his transactions with outsiders, that the property was his. He says that he deeded it to his sister, Tommye Jones, to keep his wife from getting it.

(j) No actual notice of the claim of Mrs. Oda Parish was ever brought home to the plaintiff Cone, to Hunter, to Aaron Cohen, to Reid Scott or any other claimant.

From the foregoing facts, it is my conclusion and opinion:

(1) That the plaintiff J. R. Cone is the owner of the mineral rights under an oil lease from Hunter, to ⅞ of the minerals under a one-half interest.

(2) That the Oxford foreclosure constituted a valid and legal sale of Gus Jones' title in the east half of the section in question, and that the mineral deed formerly given Aaron Cohen by Gus Jones having been given subject to the Oxford Deed of Trust, was by such foreclosure extinguished.

(3) That the deed from Oxford back to Gus Jones reinstated and revived the mineral deed of Aaron Cohen to a half interest in the southeast quarter of such section.

(4) That Reid Scott, under the Tommye Jones deed of trust, received a valid and subsisting mortgage upon the land of 160 acres, constituting the southeast quarter of that section, and that by the foreclosure of such lien he acquired title to such land in fee, subject only to the mineral deeds and leases outstanding.

(5) That the defendant Hunter, granting to J. R. Cone an oil and gas lease, retained

an eighth royalty in the minerals under the one-half interest in such section granted by Tommye Jones to said Hunter.

(6) That the Maxwell transfer from Hunter was a deed to royalty only, and as should have been produced during the lifetime, or existence, of a certain outstanding lease, and when the lease expired, all of the right to receive royalty expired, and that Maxwell and Perna Crow have no interest in the property.

(7) I find that Oda Parish has failed to establish any equitable title or right in and to the premises.

(8) I am further of the opinion that if there were any irregularities connected with the foreclosure and sale under the Oxford deed of trust, that the same were fully covered by the provisions of Article 5523 a, Vernon's Ann.Civ.St., and that more than ten years have elapsed since said foreclosure, and that such irregularity, if any, is stale and barred by the provisions of such act.

(9) I conclude that at the time Tommye Jones conveyed the land by deed of trust to Reid Scott, she was living separate and apart from her husband, managing her own affairs and not carrying his name, and was to all intents and purposes a feme sole.

■ Disposing of the questions raised in the very able trial briefs filed by the respective parties, it is insisted that the mineral deed to Aaron Cohen is uncertain in its provisions and insufficient in law. An examination of the instrument shows that it was dated September 1, 1926, filed for record September 30, 1926, consideration $160 in cash, in the usual phraseology of a Texas conveyance. It recites:

"* * * have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto the said Grantee an undivided one-half interest in and to all of the oil, gas, and other minerals in and under, and that may be produced from following described land situated in Yoakum County, Texas, to-wit:

"The East one-half (E½) of Section number 897, Block D, Yoakum County, Texas, containing three hundred and twenty (320) acres of land Together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing the same therefrom. Said land being now under an oil and gas lease executed in favor of ——— it is understood

and agreed that this sale is made subject to the terms of said lease, but covers and includes one-half (½) of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.

"It is understood and agreed that one-half (½) of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Grantee and in event that the above described lease for any reason becomes cancelled or forfeited, then and in that event an undivided one-half (½) of the lease interest and all future rentals on said land for oil, gas and other mineral privileges shall be owned by said Grantee Aaron Cohen owning (½) of all oil, gas, and other mineral in and under said lands, together with one-half (½) interest in all future rents.

"To have and to hold" etc.

We do not find the instrument subject to the criticism.

■ It is further insisted that the defendant Reid Scott, who under the Court's findings will be entitled to the fee, or surface of the land in controversy, holds under a defective title, in that he holds under and through a conveyance made by Tommye Jones, who was at the time of the conveyance a married woman and was not joined by her husband in the conveyance. The uncontradicted evidence shows that Tommye Jones and her husband had been separated for a long period of time; that she was not living with him, was managing her own affairs and has not since lived with him, and for the purpose of this transaction held herself out as a feme sole. We think the record clearly brings the case under the well established rule of Texas decisions, which authorize a single woman, living apart from her husband, to convey her property without being joined by him. Davis & Bro. v. Saladee, 57 Tex. 326; Harris v. Hamilton, Tex.Com.App., 221 S.W. 273.

■ When this land was originally conveyed to Gus Jones, a part of the consideration was the transfer of another tract of land in a different county which was heavily encumbered, and the land purchased was likewise encumbered. The land that was traded in part payment for that now in controversy, located in Yoakum County, belonged to Oda Parish, the mother of the said Gus Jones. Title was taken in the name of S. A. (Gus) Jones, who afterward mortgaged the same and made other trans-

actions with the same, with his mother's knowledge and approval, and she, to more that one person, stated that the property belonged to Gus and not to her. There was also testimony that whatever her equity might have been, that she was giving it to Gus, and her treatment of Gus and of the property afterward fully justified this view, and we have found, as a matter of fact from the evidence, that she did not assert title to the property, as indicated by the testimony of Oxford and Oxford, and by the sworn statement made by her son-in-law, which sworn statement she, herself, caused to be delivered, in which it was recited that Gus Jones was the owner of the property.

In addition, however, to the great weight of evidence there is that presumption of law that Mrs. Parish having caused this land to be deeded to her son, she intended him to have it as his own, and such presumption will stand unless and until it is shown by positive evidence that such was not the intention of the parties. Smith v. Brown, 66 Tex. 543, 1 S.W. 573, 574. In the Smith case Judge Gaines adopts the following rule: "If one causes a deed to be made to another, for whom he is under no obligation to provide (the consideration proceeding from himself), the grantee is presumed to hold the land in trust for him who paid the purchase money; but, if the grantee be the child of the latter, the property is considered an advancement, and the conveyance held to invest an absolute title in such grantee."

At the time of the sale of the land in controversy under the deed of trust from Gus Jones to Oxford & Oxford, the notices of the sale were duly posted in accordance with the deed of trust, but according to some of the testimony the courthouse of Yoakum County burned down after the posting of the notices and prior to the sale. The Commissioners' Court of the County designated another building as the courthouse during the interim, and in front of this building the sale took place. It is insisted that the trustee's deed is void, inasmuch as the notice did not appear for the full time, being destroyed in the fire, and insomuch as the sale did not occur at the door of what had been the courthouse.

The Court is of the opinion that the notices having been properly posted, and the sale having taken place at the door of the temporary courthouse, this is sufficient to establish the validity of the instrument.

"If the notices are actually put up the required number of days before the sale, it is not essential that they should have remained intact and visible during every one of the intervening days. But since the purpose is to attract bidders, notice is not posted within the meaning of the law when it is taken down by or at the instance of the person required to post it, soon after being properly affixed to the spot designated. The person making the sale, however, is not held responsible for keeping the notice posted, and its subsequent removal by a stranger will not affect the validity of the sale." 41 C.J. § 1409, p. 963. See also Graham v. Fitts, 53 Miss. 307; Carson v. Fleming, 188 N.C. 600, 125 S.E. 259; Sandusky v. Faris, 49 W.Va. 150, 38 S.E. 563; Art. 3809, R.S. Texas, (defining "courthouse door".)

The 41st Legislature of Texas enacted a law (Acts of 1929, now Art. 5523a, Vernon's Ann.Civ.St.) which it is believed by the Court was intended to quiet doubts and uncertainties concerning land titles of the character now under consideration, that part of the statute pertinent to this case being in substance as follows:

"Any person who has the right of action for the recovery of land because of any one or more of the following defects in any instrument, where it has not been signed by the proper officer of any corporation; or * * * where such instrument is executed by a trustee without record of Judicial or other ascertainment of the authority of such trustee or of the verity of the facts therein recited; or where the officer taking the acknowledgment of such instrument having an official seal did not affix the same to the certificate of acknowledgment; * * * shall institute his suit therefor not later than 10 years next after the date when such instrument has been or hereafter may be actually recorded in the office of the County Clerk of the county in which such real estate is situated and not afterwards. * * * (Acts 1929, 41st Leg. p. 394, ch. 181, § 1.)"

So far as our research goes, the Supreme Court of Texas has up to now had no occasion to pass upon the application of the above statute. Minnesota, however, has a similar statute fixing a five-year limitation, instead of ten. The Supreme Court of that State has more than once held such statutory enactment to be applicable to cases like that now under consideration.

"A foreclosure by advertisement in 1858 was defective and invalid, by reason of an insufficient publication of the notice of sale. The purchaser at the sale, or his assign, went into possession of the mortgaged premises in 1883, and has ever since continued in possession. [Suit brought in 1889]. Held, that, in an action of ejectment by one claiming under the mortgagor by conveyance subsequent to the mortgage, the right to recover because of the defective publication of the notice of sale is barred by Gen.Laws 1883, c. 112. * * * It [the statute] was doubtless designed for just such cases as this and others similar to it." Russell v. H. C. Akeley Lumber Co., 45 Minn. 376, 48 N.W. 3.

In Mogan v. Carter, 54 Minn. 141, 55 N.W. 1117, the Supreme Court of Minnesota said: "Either Mayo, the mortgagor, or the judgment creditors in the judgment against him, under which the defendants claim, could have brought suit to set aside the invalid sale at any time after that act passed, and before five years from the date of the sale expired, and by failure to do so they lost their right to have the sale declared invalid. Upon the lapse of that time it became unassailable."

Judgment will therefore be entered, as hereinabove indicated.

DAVIDSON, Judge.