George Thomas CALVERLEY et ux.,
Appellants,

v.

Lee R. GUNSTREAM et al., Appellees.

No. 18052.

Court of Civil Appeals of Texas,
Dallas.

May 31, 1973.

Rehearing Denied June 28, 1973.

Raymond B. McCoy, Kelsoe & Paternostro, Dallas, for appellants.

Wm. W. Sweet, Jr., Bowyer, Thomas & Sweet, Alfred Sallinger, Tim Kirk, Saner, Jack, Sallinger & Nichols, Dallas, for appellees.

GUITTARD, Justice.

This suit was brought for title to a house and lot which was sold more than

ten years earlier by a trustee at a non-judicial foreclosure, and in the alternative for damages for wrongful foreclosure. We hold that plaintiffs' attack on the trustee's deed is barred by limitation as a matter of law, but that a fact issue is raised concerning their claim for damages.

### Facts

Plaintiffs George Thomas Calverley and wife Hallie Inez Calverley filed this suit on March 31, 1972, against defendants Lee R. Gunstream and U. S. Oil Payments, Inc. in the form of a statutory trespass to try title action with alternative pleas of title by adverse possession. In an amended petition plaintiffs allege further that since the filing of the suit they had discovered a purported foreclosure sale under a deed of trust given by them to secure a purchase money note, but they had never been in default in the indebtedness. Plaintiffs further allege:

"Plaintiffs say that any Texas State Law that allows the recording by a State Official of such Trustee's Deed to be valid as to subsequent purchaser for a valid consideration where the Plaintiffs as in this case did not have notice of an impending foreclosure, or of an impending Trustee's sale, or did not knowingly or intelligently waive their constitutional right to the taking of their property without due process of law, is violative of the Fourteenth Amendment to the Constitution of the United States of America as applied to Plaintiffs and is thus void."

Plaintiffs prayed for title and possession and in the alternative for $20,000 actual damages and $40,000 punitive damages.

Defendants' answers include pleas of not guilty and special pleas of title under a trustee's deed dated June 3, 1958, and filed for record March 16, 1959. They further allege that any claim of irregularity in the foreclosure was barred by limitation under Vernon's Tex.Rev.Civ.Stat.Ann. art. 5523a because of the lapse of more than ten years after recording the trustee's deed.

The motion for summary judgment of defendant U. S. Oil Payments, Inc. is supported by an affidavit to which are attached the title documents on which defendants rely. These include a warranty deed dated August 1, 1954, from Gunstream to the Calverleys reciting as consideration a note for $6,734.62 payable to Gunstream, a deed of trust of the same date signed by the Calverleys to secure a note in that amount payable to Gunstream in monthly installments of $60 each and containing the usual provisions in the event of default,[1] a resignation of the orig-

---

1. "[I]f default shall be made in the payment of this note, or any installment of interest thereon, when the same shall become due, . . . then at the request of the legal holder of said note, . . . the said Trustee, or his successor or successors appointed hereunder is hereby authorized and empowered to sell the land hereby conveyed, at public auction, to the highest bidder, for cash, at the Court House door of Dallas County, Texas, between the hours of 10:00 o'clock a. m. and 4:00 o'clock p. m. on the first Tuesday in any month, after having given notice of the time, place and manner of sale by posting written notices thereof at three public places in said county, one of which shall be at the Court House Door of said county, for three consecutive weeks prior to the day of sale . . . .

"In the event of foreclosure under the power herein granted, the Grantors, their heirs, successors, or assigns, or any person in possession of said premises, shall thereupon become the tenant at will of the purchaser at such foreclosure sale, and should such tenant refuse to surrender possession of said premises upon demand, the purchaser shall thereupon be entitled to institute and maintain the statutory action for forcible detainer and procure a writ of possession thereunder. . . .

"IT IS SPECIALLY AGREED that in case of any sale hereunder, all prerequisites to said sale shall be presumed to have been performed, and that in any conveyance given hereunder all statements of facts, or other recitals therein made, as to the non-payment of money secured, or as to the breach or non-performance of any of the covenants herein set forth, or

inal trustee and an appointment by Lee R. Gunstream of W. B. Post as substitute trustee dated April 14, 1958, and a substitute trustee's deed from Post to Gunstream dated June 3, 1958. The trustee's deed recites default in the indebtedness, request of the holder to sell, posting of written notices of sale for three consecutive weeks in three public places in the county, including the courthouse door, sale at public auction to Gunstream as highest bidder for $1,000, and payment of this consideration by Gunstream in cash. Attached to the motion also is a copy of a warranty deed from Gunstream to U. S. Oil Payments, Inc. dated March 14, 1972.

Plaintiffs filed an answer to the motion stating that they had no notice of any acceleration of installments on the note or of impending foreclosure or of the trustee's sale, and that the foreclosure was a taking of their property without due process of law. They further allege that they had had adverse possession of the property since August 1, 1954. In an affidavit opposing the motion, Calverley stated that he and his wife had lived on the property and claimed it as their own at all times since August 1, 1954 and had constructed valuable improvements on it, that they never had any notice that a foreclosure had taken place or was going to take place, that they had made all payments in accordance with the original agreement with Gunstream, and had paid additional sums so as not to get into any argument, but never intended such payments to be classified as rent, but always as "house payments."

Calverley testified by deposition that he never got behind in his payments on the note, that he remembered no communication from the substitute trustee concerning a foreclosure, that he never knew about the foreclosure until the suit was filed, that he continued to make "house payments" and presumed that the house was

still his as long as he made the payments. He acknowledged receipt of various letters from Gunstream advising that the "rent" was being raised, and admitted that he had paid the increased amounts, but he said that he was a "country boy," who had not gone beyond the eighth grade in school and did not know the difference between "rent" and "house payments."

Defendant Gunstream also filed a motion for summary judgment, which plaintiffs answered. The trial court sustained the motions of both defendants and denied all relief asked by plaintiffs.

### Attack on trustee's deed

Plaintiffs contend that the trial court erred in rendering judgment for defendants based on the trustee's sale because the deed of trust and Tex.Rev.Civ.Stat.Ann. art. 3810 (1966), which governs extra-judicial foreclosures, provide only for notice by posting rather than personal notice, and that foreclosure without personal notice constitutes taking of property without due process. Defendants contend that any claim concerning invalidity of the foreclosure proceeding is barred by Tex.Rev.Civ. Stat.Ann. art. 5523a (1958), as follows:

"Any person who has the right of action for the recovery of land because of any one or more of the following defects in any instrument, . . . or where such instrument is executed by a trustee without record of Judicial or other ascertainment of the authority of such trustee or of the verity of the facts therein recited . . . shall institute his suit therefor not later than 10 years next after the date when such instrument has been or hereafter may be actually recorded in the office of the County Clerk of the county in which such real estate is situated and not afterwards; . . . ."

as to the request of the Trustee, to enforce this Trust, or as to the proper and due appointment of any substitute Trustee, or as to the advertisement of sale, or time or place or manner of sale,

or as to any other preliminary act or thing, shall be taken in all courts of law or equity as prima facie evidence that the facts so stated or recited are true."

■■ We hold that defendants' plea of limitation was properly sustained. The apparent purpose of article 5523a is to quiet title in any person claiming under an extra-judicial foreclosure sale as against an attack based on a stale claim concerning matters not of record and which could have been judicially ascertained in a foreclosure suit or in a suit brought promptly after recording the trustee's deed. The present suit comes within that purpose and within the literal language of the statute, since it was filed more than ten years after recording of the trustee's deed in question and this deed was "executed by a trustee without record of Judicial or other ascertainment of the authority of such trustee or of the verity of the facts therein recited." The two grounds of attack here are lack of default in the indebtedness and failure to give personal notice to plaintiffs. Neither of these circumstances appears from the recorded documents, and plaintiffs' oral testimony from their unaided memories is the only summary-judgment proof offered in answer to defendants' motions.

■■ The trustee's deed expressly recites that a default did occur, and the verity of that recital is not subject to attack more than ten years after recording in a suit for recovery of the land. Dall v. Lindsey, 237 S.W.2d 1006 (Tex.Civ.App., Amarillo 1951, writ ref'd n. r. e.). The trustee's deed makes no recital concerning personal notice. We need not determine whether personal notice was constitutionally required for a valid trustee's sale. If so, the Constitution would not invalidate either the deed of trust or article 3810, but would only add the requirement of personal notice to the contractual and statutory requirement of posting. If plaintiffs actually received personal notice, failure of the deed of trust and of the statute to require such notice would afford plaintiffs no ground to attack the sale. Lack of personal notice, like a defect in posting, would affect the "authority of such trustee" to sell the property and would be subject to

judicial ascertainment immediately on recording the trustee's deed. Consequently any right to recover the land on that ground is now barred by article 5523a. Cone v. Parish, 32 F.Supp. 412 (N.D.Tex. 1940), aff'd sub nom. Scott v. Cohen, 115 F.2d 704 (5 Cir. 1940), cert. denied 312 U. S. 703, 61 S.Ct. 806, 85 L.Ed. 1136; cf. Covington v. Priddy, 373 S.W.2d 877 (Tex.Civ.App., El Paso 1964, writ ref'd n. r. e.).

This holding is consistent with Burrow v. McMahan, 384 S.W.2d 124 (Tex.1964), the only case in which the Supreme Court has construed article 5523a. In that case the county records revealed that the person who purported to act as trustee had no authority to sell the land because he had been appointed by an assignee of one installment of the secured note rather than by the holder of the principal indebtedness. The Supreme Court held that since the record showed affirmatively and conclusively that the purported substitute trustee was without authority to sell the land under the terms of the deed of trust, article 5523a had no application. In that case the purported trustee's lack of authority could have been discovered easily by a title examiner. In the present case the instruments of record do not show any lack of authority on the part of the trustee. On the contrary, plaintiffs seek to show such lack of authority by oral testimony offered more than thirteen years after the trustee's sale.

■■ The bar of limitation is not affected by plaintiffs' claim that the sale without personal notice deprived them of their property without due process. Statutes of limitation go to matters of remedy rather than fundamental rights; they are expedients rather than principles, and are justified by the necessity of sparing courts from litigation of stale claims and the citizen from being put to his defenses after memories have faded, witnesses have died or disappeared, and evidence has been lost. Chase Securities Corporation v. Donaldson,

325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). This justification and the literal provisions of limitation statutes apply to delay in pursuit of remedies for enforcement of constitutional rights as well as to any other delay in pursuit of available remedies. Accordingly, we hold that the trial court was correct in granting summary judgment denying plaintiffs any relief based on invalidity of the trustee's sale.

### Adverse possession

■ Plaintiffs also contend that the trial court erred in rendering summary judgment against them because their allegations of adverse possession under the three-, five- and ten-year statutes of limitation raised genuine issues of material fact. They say that defendants' motion is insufficient to show that no fact issues exist as to adverse possession because defendants allege that plaintiffs' payment of rent to Gunstream after the trustee's sale was a recognition of Gunstream's title, whereas plaintiffs testified in their deposition that they were making "house payments" rather than "rent payments." This argument is without merit. It is immaterial whether plaintiffs regarded these payments as rent or as payments on the purchase money indebtedness, since, in either event, their possession was not adverse to Gunstream. When a deed reserves a vendor's lien for unpaid purchase money, possession of the vendee is not adverse to the superior title of the vendor, and limitation does not run against the vendor by the vendee's possession until the purchase price is paid or unless the vendee gives the vendor unequivocal notice of repudiation of the vendor's superior title. Roosevelt v. Davis, 49 Tex. 463, 473 (1878). If the trustee's deed was invalid, plaintiffs remained in possession as vendees owing a balance on the note; if it was valid they became Gunstream's tenants at will, as provided in the deed of trust. In the latter situation also an unequivocal notice of repudiation of Gunstream's title was necessary for their possession to be adverse.

Killough v. Hinds, 161 Tex. 178, 338 S.W. 2d 707 (1960).

■ Plaintiffs argue that Gunstream had notice of hostility of their claim and in fact recognized such claim by sending them a letter dated March 17, 1959, requesting them to sign an attached acknowledgment of tenancy and disclaimer of title, which they refused to sign. We do not see how Gunstream's request that plaintiffs acknowledge his title can be construed as evidence of recognition of plaintiffs' title or as evidence that he had notice of their adverse claim, particularly when plaintiffs continued to make payments which Gunstream demanded as rent and acquiesced in his demands that such payments be increased from time to time. Since the record affirmatively shows that plaintiff's possession was not adverse to Gunstream, the trial court properly rendered summary judgment denying plaintiffs any recovery based on adverse possession under the statutes of limitation.

### Wrongful foreclosure

Finally, we consider plaintiffs' contention that the court erred in granting summary judgment against them on their alternative claim of damages for fraudulent foreclosure. This contention is sustained. Plaintiffs allege that Gunstream falsely and fraudulently represented to the substitute trustee Post that plaintiffs were in arrears in their payments, that such representation was material and made for the purpose of inducing Post to sell the property in accordance with the terms of the deed of trust, that Post did sell the property to defendant Gunstream, but would not have done so if he had known the representation was false and fraudulent, that plaintiffs have been damaged in the amount of $20,000 as a result of such foreclosure, and that they only learned of the fraud on or about March 16, 1972. Defendant Gunstream makes no specific answer to these allegations. He pleads a general denial and alleges that a default

did in fact occur. He presents no evidence of default in support of his motion for summary judgment other than the recitation in the trustee's deed. In reply to the motion, the affidavit of plaintiff George Thomas Calverley states that plaintiffs have never defaulted in payment of their note, and in his deposition he testified that they never got behind in their payments but were up to date at all times. The note itself is attached to the deposition, but no record of payments is in evidence.

In this state of the record we hold that an issue of fact is raised as to whether the foreclosure was wrongful because no default had occurred and that the allegations of the petition are sufficient to state a claim for damages for wrongful foreclosure under such authorities as League City State Bank v. Mares, 427 S. W.2d 336 (Tex.Civ.App., Houston [14th] 1968 no writ); and Covington v. Burke, 413 S.W.2d 158 (Tex.Civ.App., Eastland 1967, writ ref'd n. r. e.); cf. Maupin v. Chaney, 139 Tex. 426, 163 S.W.2d 380 (1942). Although article 5523a precludes any contradiction of the recital of default in the trustee's deed after a lapse of more than ten years in plaintiff's suit to recover the land, that statute does not by its terms apply to a suit for damages for wrongful foreclosure, which assumes the validity of the trustee's deed and its effectiveness to pass title. No other statute of limitations or limitation period has been pleaded by defendant Gunstream. By the terms of the deed of trust, the recitals in the trustee's deed are only prima-facie evidence. As between the original parties they may be rebutted. Slaughter v. Qualls, 139 Tex. 340, 162 S.W.2d 671 (1942). In the absence of any plea of limitation applicable to plaintiffs' claim for wrongful foreclosure, we need not consider what period of limitation would apply or whether plaintiffs' allegations and testimony would raise a fact issue concerning the time limitation began to run.

The judgment of the trial court is affirmed insofar as it denies plaintiffs recovery of the land in question. It is reversed and remanded insofar as it denies plaintiffs recovery of damages against defendant Gunstream. Costs of appeal are divided equally between plaintiffs and defendant Gunstream.