In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00168-CR


______________________________




WILLIAM RAY JACOBS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 402nd Judicial District Court


Wood County, Texas


Trial Court No. 14,725-96




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 William Ray Jacobs appeals the trial court's denial of his motion for DNA (1) testing pursuant
to Chapter 64 of the Texas Code of Criminal Procedure. In his sole point of error, Jacobs contends
he presented sufficient evidence to the trial court to establish a reasonable probability that DNA
testing would prove his innocence. For the reasons stated below, we affirm the trial court's
judgment.

I. Factual Background

 On January 8, 1997, a petit jury found Jacobs guilty of aggravated sexual assault, as charged
in the indictment. (2) Jacobs pled "true" to having been previously and finally convicted of assault with
intent to rape, as further alleged in the indictment. The jury then assessed Jacobs' punishment at
imprisonment for life. The trial court entered an affirmative deadly weapon finding. On appeal, this
Court affirmed the judgment. Jacobs v. State, 951 S.W.2d 900 (Tex. App.-Texarkana 1997, pet.
ref'd).

 On January 7, 2002, the trial court appointed counsel for the purpose of allowing Jacobs to
pursue post-conviction DNA testing. Jacobs filed his motion for post-conviction DNA testing on
March 15, 2002. On March 26, 2002, the trial court notified the State that a response, if any, to
Jacobs' motion was due by April 22, 2002. The record does not indicate the State filed a response. 
On April 28, 2002, the trial court granted Jacobs' motion for post-conviction DNA testing and issued
written findings of fact and conclusions of law, stating in part: 

Biological material consisted of "scrapings" from the victim's face, saliva samples,
oral smear slides, oral "swabbings", "scrapings" from the victim's fingernails and
"scrapings" from her clothes. DNA testing was not conducted on the biological
material at or prior to trial. The biological material is currently possessed by the
Wood County Sheriff's Office who maintained it at the time of trial. The evidence
exists in a condition making DNA testing possible. The evidence has been subject
to a chain of custody sufficient to establish that it has not been substituted, tampered
with, replaced, or altered in any material respect.


The identity of the perpetrator was the major issue at trial. Had the biological
evidence been tested under current techniques and resulted in evidence of the
presence of another person's DNA besides that of the victim (exculpatory evidence)
a reasonable probability exists that Jacobs would not have been prosecuted or
convicted of aggravated sexual assault.


The State then forwarded evidence to the Department of Public Safety (DPS) Field Laboratory in
Garland, Texas, for DNA testing pursuant to the trial court's order.

 On July 5, 2002, Pat Johnson, manager of the DPS Field Laboratory, informed the trial court 
the evidence submitted to the laboratory contained no nuclear DNA. Analysts found no semen or
blood on any of the evidence submitted. Though laboratory workers did find two human hairs
among the submitted items, these hairs did not have attached skin cells or hair root material, which
would be necessary to perform nuclear DNA testing. To test a strand of hair that contains no root
or skin cells, analysts would have to conduct a different test called mitochondrial DNA testing. (3) 
DPS laboratories, however, are only equipped for nuclear DNA testing. Mitochondrial DNA testing
is not yet widely available. Johnson concluded his letter by recommending the trial court pursue
mitochondrial DNA testing and by offering to give the trial court the names and telephone numbers
of laboratories that could perform mitochondrial DNA testing on the hair samples. On July 22, 2002,
the trial court asked Johnson to send it the names and telephone numbers of laboratories that perform
mitochondrial DNA testing. 

 The State filed a motion to reconsider DNA testing on July 25, 2002. Jacobs filed a response
to the State's motion on August 2, 2002. One week later, the trial court granted the State's motion
after conducting a hearing on the issue. The trial court then held that a wealth of inculpatory
evidence existed, including eyewitness testimony and testimony from the defendant's wife
establishing the defendant's identity as the perpetrator. Based on that evidence, the trial court found
DNA testing would not serve to exculpate Jacobs or dissuade the State from prosecuting the case. 
Accordingly, the trial court denied Jacobs' motion for post-conviction DNA testing. Jacobs filed his
notice of appeal to this Court on September 12, 2002. 

II. Jurisdiction

 The State contends this Court lacks jurisdiction to consider the merits of Jacobs' appeal. The
trial court signed the order denying Jacobs' motion for DNA testing on August 12, 2002. The order
was  filed  with  the  district  clerk  on  August  13,  2002.  Jacobs  filed  his  notice  of  appeal  on
September 12, 2002-thirty-one days after the order was signed and thirty days after it was filed. 
Unless a motion for new trial is filed, an appellant must file a notice of appeal within thirty days of
the trial court's judgment to vest jurisdiction over the case with the appellate court. Tex. R. App. P.
26.2(a). 

 The Amarillo Court of Appeals recently addressed a similar case involving procedural
jurisdiction. In In re Marriage of Gary, No. 07-01-0466-CV, 2002 WL 1806800, at *1 (Tex.
App.-Amarillo Aug. 7, 2002, no pet. h.) (unpublished order on jurisdiction), the appellant filed his
notice of appeal one day late, although the certificate of service predated the filing deadline. The
Amarillo court, citing Verburqt v. Dorner, 959 S.W.2d 615, 617 (Tex. 1997) said, "[a] motion for
extension of time is implied when an appellant acting in good faith files, within the 15 day period
in which the appellant would be entitled to move to extend the filing deadline, documents showing
a bona fide intent to appeal." Gary, 2002 WL 1806800, at *1. The Amarillo court then granted the
implied motion for extension of time to file a notice of appeal, thereby conferring the court with
jurisdiction to consider the merits of the appeal.

 In the case now before this Court, Jacobs' notice of appeal was filed by the district clerk one
day after the thirty-day deadline. The certificate of service states the notice was mailed two days
before the deadline. "A document received within ten days after the filing deadline is considered
timely filed if . . . it was deposited in the mail on or before the last day for filing." Tex. R. App. P.
9.2(b)(1). Under the mailbox rule, we deem Jacobs' notice of appeal timely filed. Alternatively,
granting the implied motion for extension of time to file the notice of appeal would be sufficient to
confer jurisdiction over the case with this Court. Jurisdiction exists for us to reach the merits of
Jacobs' appeal.

III. DNA Testing

A. Standard of Review

 A trial court's denial of a motion for post-conviction DNA testing is reviewed under a
bifurcated process. Rivera v. State, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002) (citing Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); Green v. State, No. 04-02-00221-CR, 2002 WL
31694228, at *1 (Tex. App.-San Antonio Dec. 4, 2002, pet. filed). We afford almost total deference
both to the trial court's determination of historical fact and to its application of law-to-fact issues that
turn on credibility and demeanor. Rivera, 89 S.W.3d at 59; Green, 2002 WL 31694228, at *1. But
we  review  de  novo  all  other  application  of  law-to-fact  issues.  Rivera,  89  S.W.3d  at  59;
Green, 2002 WL 31694228, at *1. This de novo review usually includes the ultimate issue in post-conviction DNA testing cases, "whether a reasonable probability exists that exculpatory DNA would
prove innocence." Rivera, 89 S.W.3d at 59.

 Citing Rivera, Jacobs contends that the scope of the evidence an appellate court may review
is limited to the evidence relating to the motion and/or hearing on the motion for DNA testing. We
do not read Rivera to either directly or indirectly so narrowly limit the scope of our review. 
Undoubtedly, the trial court would have before it the court's entire file when ruling on a motion for
post-conviction DNA testing. Because this case had been previously appealed, the trial court had
access to testimony in the reporter's record. (4) In short, the trial court itself would not be limited to
examining evidence offered by the parties during post-conviction litigation. If we are to review de
novo those issues of fact that do not turn on witness credibility or demeanor, we must have available
the same evidence to which the trial court had access. See id. To hold otherwise would thwart our
ability to effectively review these types of cases.

 Second, requiring the nonmoving party-which in DNA cases will usually be the State-to
reoffer the entirety of its evidence (so as to counter the movant's claims regarding false
identification) would be extremely burdensome and a waste of judicial economy. Such a procedure
might turn DNA hearings into quasi mini-trials, complete with sponsoring witness testimony,
affidavits of interested parties, and challenges to evidentiary admissibility. 

 Third, a plain reading of the Texas Rules of Appellate Procedure contemplates our ability to
supplement the clerk's record with any relevant item that is part of the entire record below. See Tex.
R. App. P. 34.5(c)(1). The trial court is usually in the best position to take judicial notice of items
already in evidence from previous proceedings, including witness testimony, recorded confessions
(written or oral), photographs, or other tangible evidence. See Tex. R. Evid. 201. This Court may
also take notice of its own file from the direct appeal of this case. Cf. Tex. Capital Sec. v. Sandefer,
No. 06-02-00042-CV (Tex. App.-Texarkana June 27, 2003) (appellate court implicitly taking
judicial notice of findings in sister court's opinion in prior appeal between same parties). 
Accordingly, we do not find the scope of our ability to review the evidence to be limited in the
manner suggested by Jacobs.

B. Obtaining DNA Testing Under Chapter 64

 At oral argument, Jacobs reasoned he should prevail on appeal if he could establish by a
preponderance of the evidence that there is a reasonable probability that DNA testing would have
created a reasonable doubt among the jury at trial. We do not concur with Jacobs' reasoning.

 To obtain post-conviction DNA testing, the convicted person must establish by a
preponderance of the evidence that a reasonable probability exists that he or she would not have been
prosecuted or convicted if "exculpatory results had been obtained through DNA testing." (5) Rivera,
89 S.W.3d at 59 (citing Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(A)(i), (2)(A)). This
requirement is not a two-part test. "The convicted person is not required to show both that a
reasonable probability exists that the person would not have been prosecuted and that the person
would not have been convicted." S.J. of Tex., 77th Leg., R.S. 995 (2001) (emphasis added),
<http://www.capitol.state.tx.us/sjrnl/77r/pdf/4-2.pdf>, at *25. Exculpatory evidence is that which
tends to free the defendant from blame or accusation or otherwise establish his or her innocence. 
Black's Law Dictionary 577, 588 (7th ed. 1999).

 The statutory requirement that testing results be exculpatory is not met if the DNA evidence
would "merely muddy the waters." Instead, the evidence must tend to prove the defendant's
innocence. Rivera, 89 S.W.3d at 59 (citing Kutzner v. State, 75 S.W.3d 427, 439 (Tex. Crim. App.
2002)). Stated differently, DNA testing must conclusively outweigh all other evidence of the
convicted's guilt. Id.; Thompson v. State, No. 01-02-00253-CR, 2002 WL 31618806, at *3 (Tex.
App.-Houston [1st Dist.] Nov. 21, 2002, pet. filed).



 Jacobs contends,

 the evidence establishes that the testing could result in evidence of the involvement
of a third party: not the victim and not Jacobs. Therefore, had the biological
evidence been tested and resulted in evidence of the presence of another person's
DNA besides that of the victim (exculpatory evidence), a reasonable probability
exists that Jacobs would not have been prosecuted or convicted of aggravated sexual
assault. 


In essence, Jacobs hopes mitochondrial DNA testing will show the hair samples came from a third
party. Such evidence, however, would "merely muddy the waters" by demonstrating that a third
party had, at some point in time (but not necessarily at the time of the crime), been inside the sleeper
compartment of the tractor truck. Such evidence would not, on its own, exonerate Jacobs and
thereby support the ordering of a DNA test. See Rivera, 89 S.W.3d at 59; Kutzner, 75 S.W.3d at
439.

 Accordingly, the evidence before the trial court did not show DNA testing would prove
Jacobs' actual innocence. This conclusion might be different if the sexual assault examination had
yielded seminal or blood DNA evidence from the perpetrator. However, the presence of a third-party
hair on Jacobs' bed linens or clothing not belonging to the victim does not necessarily prove Jacobs'
innocence. We hold the trial court did not err by denying Jacobs' motion for post-conviction DNA
testing. 




 We affirm the trial court's judgment.

 

 Josh R. Morriss, III

 Chief Justice


Date Submitted: June 19, 2003

Date Decided: July 8, 2003


Publish
1. Deoxyribonucleic Acid. DNA is "a nucleic acid that constitutes the genetic material of all
cellular organisms and the DNA viruses." Dorland's Illustrated Medical Dictionary 447
(27th ed. 1988).
2. The indictment alleged Jacobs used or exhibited a firearm during the commission of the
sexual assault in the sleeping compartment of his tractor truck. 
3. Mitochondrial DNA testing involves analyzing the strands of DNA contained in the
mitochondria. The mitochondria are "small spherical to rod-shaped components (organelles) found
in the cytoplasm of cells, enclosed in a double membrane, with an internal membrane space between
the two units, the inner one infolded into the interior of the organelle as a series of projections
(cristae)." Dorland's Illustrated Medical Dictionary 1043 (27th ed. 1988). "A single
mitochondrion contains 37 genes on a circular mitochondrial DNA, compared with about 35,000
genes contained in the nuclear DNA." Comm. on Sci., Eng'g, & Pub. Policy, The Nat'l Acad.
of Sciences, Scientific & Med. Aspects of Human Reprod. Cloning, 267 (2002), 
<http://books.nap.edu/books/0309076374/html/267.html>. 
4. The trial court's judgment reflects it reviewed the reporter's record of the trial before issuing
its judgment on the State's motion for reconsideration. In support of its opposition to further testing,
the State's motion to reconsider had incorporated references to specific portions of the reporter's
record. 
5. Additionally, "Article 64.03(a) only permits a trial court to order DNA testing if the court
finds that identity was or is an issue in the case." Green v. State, No. 04-02-00221-CR, 2002 WL
31694228, at *1 (Tex. App.-San Antonio Dec. 4. 2002, pet. filed) (citing Tex. Code Crim. Proc.
Ann. art. 64.03(a)(1)(B) (Vernon Supp. 2003)). The parties in this case, however, agree that identity
was and is an issue. Therefore, we need not address this element of the movant's burden of proof. 
See Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(B).



ased, or the vendee gives the vendor unequivocal notice of repudiation of the vendor's superior
title. Calverly v. Gunstream, 497 S.W.2d 110, 115 (Tex. Civ. App.-Dallas 1973, writ ref'd n.r.e.). 
In 1955, Deport issued a partial release of lien and therein declared its note paid. In 1962, Banker's
released its lien and declared its note paid. We conclude the statute of limitations for adverse
possession began to run in 1962, when the Antones no longer had a valid vendor's lien, and any
Zanfardino claim to title of the land would have been barred by adverse possession regardless of
whether the twenty-five-year or ten-year statute of limitations is applied.
5. Zanfardino also relies on Section 113.053 for the proposition that trustees may not purchase
trust property for themselves. See Tex. Prop. Code Ann. § 113.053 (Vernon 1995). That portion
of the Code, however, expressly provides that it does not apply to "a security instrument such as a
deed of trust . . . ." Tex. Prop. Code Ann. § 111.003 (Vernon 1995).