In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00162-CV


______________________________




BELINDA A. ZANFARDINO, Appellant



V.



HUGH L. JEFFUS, JR., MARSHALL TURNER JEFFUS, AND 


NANALEE MAY JEFFUS NICHOLS, Appellees




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 68707




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 In 1952, John Antone and his daughter, Virginia Antone, (the Antones) owned two tracts of
land, one consisting of 598.73 acres in Lamar County and the other consisting of 281.73 acres in Red
River County. The Antones borrowed approximately $20,000.00 from Banker's Life Insurance
Company (Banker's) and used the 598.73-acre tract in Lamar County as collateral. In 1953, the
Antones borrowed an additional $13,860.00 from Deport State Bank (Deport). As collateral for the
second loan, the Antones placed the 281.73-acre tract in Red River County and 386.25 acres of the
tract in Lamar County into a deed of trust, making Deport a second lienholder with respect to the
386.25 acres located in Lamar County. The deed of trust named Tom Jeffus, in his individual
capacity, as trustee. (1) 

 In 1955, the Antones defaulted on the second loan and deeded both tracts to Tom Jeffus in
his individual capacity. In exchange, Tom Jeffus agreed to assume all of the Antones' outstanding
debt to Banker's and Deport, and the Antones retained a vendor's lien on the property until both loans
had been paid. In order to pay the debt owed to Deport, Tom Jeffus sold the 281.73-acre tract in Red
River County to Joe Antone, John Antone's brother, for $9,913.40. (2) After receiving the proceeds
from that sale, Deport issued a release of its lien and declared the obligation paid. Further, in 1962,
Tom Jeffus procured a loan from Prudential Insurance Company and gave the Lamar County tract
as collateral for that loan. The proceeds from that loan were used to pay the outstanding debt owed
to Banker's. Accordingly, on January 25, 1962, Banker's executed a release of its lien on the Lamar
County tract and declared the obligation paid. Through a series of payments made by Tom Jeffus
and his successors, Prudential executed a release of its lien on the Lamar County tract in 1980.

 In 1999, Belinda A. Zanfardino, daughter of Virginia Antone and granddaughter of John
Antone, came under the impression, after reviewing the documentation of the above transactions,
that Tom Jeffus had fraudulently induced her mother and grandfather into deeding those tracts to
him. (3) Accordingly, Zanfardino contacted the title company to assert her claim to the property. At
that time, the Lamar County tract was in the possession of Tom Jeffus' grandson, Hugh L. Jeffus, Jr.
(Appellee). Appellee claims that, because Zanfardino created a cloud on the title, Appellee was
unable to sell the tract. Appellee brought this suit against Zanfardino to clear title and to seek
damages for loss of sale. Zanfardino defended on the basis of fraud.

 Appellee filed a motion for summary judgment asserting (1) his legal title was undisputed,
and (2) there was no evidence Zanfardino had any claim to the title. In his motion for summary
judgment, Appellee argued his title was good as a matter of law because there was no evidence
supporting Zanfardino's fraud claim and any such claim would be barred by limitations and adverse
possession.

 The trial court granted a partial summary judgment in favor of Appellee on the title issue and
severed Appellee's slander of title claim against Zanfardino, making the summary judgment final and
appealable. On appeal, Zanfardino asserts summary judgment was improper because fact issues exist
as to: (1) whether the land had been acquired fraudulently, (2) whether the statute of limitations
barred Zanfardino's claims, and (3) whether Appellee had a valid adverse possession claim. We
affirm.

 On appeal, summary judgment is reviewed de novo in accordance with the following
standards: (1) the movant has the burden of showing that there is no genuine issue of material fact
and that the movant is entitled to judgment as a matter of law; (2) in deciding whether there is a
disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will
be taken as true; and (3) every reasonable inference and any doubts must be resolved in the
nonmovant's favor. Limestone Prods. Distrib., Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002). 
Further, when the order granting summary judgment fails to specify the reason for granting the
motion, an appellant must show that each individual ground for summary judgment raised in the
motion would be insufficient to support summary judgment. FM Props. Operating Co. v. City of
Austin, 22 S.W.3d 868, 872 (Tex. 2000). On the other hand, summary judgment must be affirmed
if any of the grounds raised in the motion are meritorious. Id. We conclude all three grounds were
meritorious.

 Zanfardino contends Tom Jeffus defrauded the Antones out of the property and, furthermore,
as trustee under the deed of trust, owed a fiduciary duty to the Antones. Zanfardino also contends
Tom Jeffus was guilty of self-dealing because he took both the Red River and Lamar County tracts
personally, instead of in his representative capacity for Deport.

 To establish a fact question on her fraud claim, Zanfardino must have presented some
competent summary judgment evidence of each of the following elements of fraud: (1) that Tom
Jeffus made a material, false representation, (2) that he knew was false or that he made recklessly
as a positive assertion without any knowledge of its truth, (3) intending to induce the Antones to act
on the representation, and (4) on which the Antones actually and justifiably relied, thereby suffering
injury. See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001). We
have carefully examined the summary judgment evidence and find no evidence to raise a fact
question as to any of those elements of a fraud cause of action. Therefore, there is no evidence to
support Zanfardino's fraud claim. (4)

 In Zanfardino's "Affidavit of Fact" offered to resist Appellee's motion for summary judgment,
she offered various statements which might be argued were evidence of fraud. In each case,
however, her statements were conclusory, speculative, hearsay, or simply not evidence of any
element of a fraud claim.

 Zanfardino claims Tom Jeffus fraudulently procured the property by taking more land than
was necessary to pay the debt owed to Deport. Specifically, Zanfardino claims Tom Jeffus
misrepresented the value of the land secured by the deed of trust and convinced the Antones to deed
both tracts in exchange for his assumption of their debts. First, the only language in the summary
judgment evidence suggesting that the sale of the Red River County tract would have been sufficient
to satisfy the outstanding balance owed to Deport was the following statement made by Zanfardino
in her affidavit: 

 On May 7, 1955, my Grandfather and Mother drove from Dallas to [Deport] to pay
their three notes in full. They met with the President of the Bank and Trustee, Tom
Jeffus. When the Antones left their apartment in Dallas that morning, they did not
believe they would have to deed all of their land to the Bank. They believed that the
land in Red River County and the herd of cattle covered by the Chattel mortgage
would satisfy the balance at the Bank. 


Zanfardino's statement is both hearsay and conclusory, and it is insufficient to raise a genuine issue
of material fact. See Tex. R. Evid. 801; Life Ins. Co. v. Gar-Dal, Inc., 570 S.W.2d 378 (Tex. 1978);
Gracey v. West, 422 S.W.2d 913, 916 (Tex. 1968).

 There is no evidence in the record that Tom Jeffus ever made any representations to the
Antones concerning the value of the two tracts. The only proposal found in the record was that Tom
Jeffus agreed to assume the Antones' debts to Banker's and Deport in exchange for the Lamar and
Red River County tracts. An agreement to assume a debt is a prospective promise to perform, not
a misrepresentation of fact that could support a fraud claim unless accompanied by proof that, at the
time of the promise, the promisor intended not to perform. Cent. Sav. & Loan Ass'n v. Stemmons
Northwest Bank, N.A., 848 S.W.2d 232, 240 (Tex. App.-Dallas 1992, no pet.). There is no such
evidence in this record.

 In support of her contention that Tom Jeffus' position as trustee under the deed of trust
created a confidential relationship between him and the Antones, Zanfardino relies on First Fed. Sav.
& Loan Ass'n v. Sharp, 359 S.W.2d 902, 904 (Tex. 1962). Zanfardino's reliance on Sharp, however,
is misplaced. The Sharp decision merely stands for the proposition that a trustee in the deed of trust
forecloses thereunder as the special agent for both the mortgagor and the mortgagee, and has a duty
to conduct any foreclosure sale in a fair and impartial manner and in accordance with the terms of
the trust instrument. In the present case, Tom Jeffus was never asked to foreclose on the land in
question, nor did a foreclosure ever take place. Further, since the Sharp decision, courts have
consistently held that the trustee in a deed of trust does not owe a fiduciary duty to the mortgagor.
Stephenson v. LeBoeuf, 16 S.W.3d 829, 837 (Tex. App.-Houston [14th Dist.] 2000, pet. denied);
First State Bank v. Keilman, 851 S.W.2d 914, 925 (Tex. App.-Austin 1993, writ denied); see also
Castillo v. First City Bancorporation of Tex., 43 F.3d 953, 960 (5th Cir. 1994) (applying Texas law);
FDIC v. Myers, 955 F.2d 348, 350 (5th Cir. 1992) (applying Texas law). Accordingly, Tom Jeffus
did not owe a fiduciary duty to the Antones by virtue of his office as trustee in the deed of trust. (5)

 There is no evidence Tom Jeffus fraudulently induced the Antones to deed the two tracts to
him. We overrule Zanfardino's point of error and affirm the judgment of the trial court.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 16, 2003

Date Decided: July 31, 2003
1. Tom Jeffus was also president of Deport at the time this deed of trust was executed. 
2. In the record is a check in that amount apparently written by John Antone, but Zanfardino's
affidavit concludes that it must have represented proceeds from the sale.
3. By 1999, the Antones were both deceased. 
4. Even if there had been evidence of fraud, we believe the trial court's summary judgment was
proper on the basis of the statute of limitations and of adverse possession. The documentation found
by Zanfardino and other information recounted in her affidavit was information of which the
Antones were actually aware or on notice.

 A four-year limitations period applies to a fraud cause of action. Tex. Civ. Prac. & Rem.
Code Ann. § 16.004(a)(4) (Vernon 2002). Fraud, however, prevents the running of the statute of
limitations until it is discovered or, by exercise of reasonable diligence, it might have been
discovered. Velsicol Chem. Corp. v. Winograd, 956 S.W.2d 529, 531 (Tex. 1997). Parties have
actual knowledge if they have personal knowledge of the terms in the deed. City of Houston v. Muse,
788 S.W.2d 419, 422 (Tex. App.-Houston [1st Dist.] 1990, no writ). Even if, before signing the
deed, the Antones believed they would be asked to convey all or only part of the property to Deport,
they had actual notice when they signed the deed in 1955 that Tom Jeffus was taking title to all of
the property in his individual capacity. See Mooney v. Harlin, 622 S.W.2d 83, 85 (Tex. 1981).

 Under the Texas Civil Practice and Remedies Code, adverse possession is defined as "actual
and visible appropriation of real property, commenced and continued under a claim of right that is
inconsistent with and is hostile to the claim of another person." Tex. Civ. Prac. & Rem. Code Ann.
§ 16.021 (Vernon 2002). The only issue in dispute is when limitations began to run. When a deed
reserves a vendor's lien, possession of the vendee is not adverse to the superior title of the vendor,
and the statute of limitations for adverse possession does not begin to run until the vendor's lien is
released, or the vendee gives the vendor unequivocal notice of repudiation of the vendor's superior
title. Calverly v. Gunstream, 497 S.W.2d 110, 115 (Tex. Civ. App.-Dallas 1973, writ ref'd n.r.e.). 
In 1955, Deport issued a release of its lien on the two tracts and declared its note paid. In 1962,
Prudential released its lien and declared its note paid. We conclude the statute of limitations for
adverse possession began to run in 1962, when the Antones no longer had a valid vendor's lien, and
any Zanfardino claim to title of the land would have been barred by adverse possession regardless
of whether the twenty-five-year or ten-year statute of limitations is applied.
5. Zanfardino also relies on Section 113.053 for the proposition that trustees may not purchase
trust property for themselves. See Tex. Prop. Code Ann. § 113.053 (Vernon 1995). That portion
of the Code, however, expressly provides that it does not apply to "a security instrument such as a
deed of trust . . . ." Tex. Prop. Code Ann. § 111.003 (Vernon 1995). 



ideWhenUsed="false" Name="Medium Grid 1 Accent 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00016-CR

                                                ______________________________

 

 

                                     THE STATE OF
TEXAS, Appellant

 

                                                                V.

 

                                    JOHN HARDY TAYLOR, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 336th Judicial District Court

                                                             Fannin County, Texas

                                                            Trial
Court No. 23054

 

                                                         
                                         

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            In its
indictment, the State alleged that, on or about August 13, 2008, John Hardy
Taylor was the owner of a dog he knew to be dangerous.  It is further alleged that, on the date in
question, Taylors dangerous dog, while not restrained in a secure enclosure, made
an unprovoked attack on Haiden Lynn McCurry, causing serious bodily injurya
violation of Section 822.005(a)(2) of the Texas Health and Safety Code.[1]  The trial court dismissed the indictment
against Taylor with prejudice on the grounds that Section 822.005(a)(2) of the
Texas Health and Safety Code is an unconstitutionally vague, strict-liability
statute.  Tex. Health & Safety Code Ann. § 822.005(a)(2)
(Vernon 2010).  The State appeals from
the order quashing the indictment in trial court cause number 23054.  

            The State
also appeals from the order quashing the indictment in trial court cause number
23053, and has filed a single brief, in which the State raises issues common to
both appeals.  The State contends the
statute in question is not an unconstitutionally vague, strict-liability statute,
and the order quashing the indictment should therefore be reversed.  We addressed these issues in detail in our
opinion of this date in cause number 06-10-00015-CR.  For the reasons stated therein, we likewise
conclude that the statute is constitutional, but nevertheless affirm and modify
the order[2]
quashing the indictment because it fails to allege a culpable mental state.

            

 

            As
modified, the order of the trial court is affirmed.

 

                                                                                    

            

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

Date Submitted:          July
6, 2010

Date Decided:             July
23, 2010

 

Do Not Publish

 

 











[1]Because
this is an appeal of a pretrial order, no testimony or evidence appears in the
record.

 





[2]As
explained in our opinion of this date in cause number 06-10-00015-CR, the trial
court dismissed the indictment with prejudice. 
Because the statute is not unconstitutional, the indictment should have
been dismissed without prejudice.