Belinda A. ZANFARDINO, Appellant,

v.

Hugh L. JEFFUS, Jr., Marshall Turner Jeffus, and Nanalee May Jeffus Nichols, Appellees.

No. 06–02–00162–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 16, 2003.

Decided Sept. 25, 2003.

John R. Mercy, Mercy, Carter, Tidwell & Elliott, LLP, Texarkana, for Appellant.

J. Stephen Walker, Moore Law Firm, LLP, Paris, for Appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

In 1952, John Antone and his daughter, Virginia Antone, (the Antones) owned two tracts of land, one consisting of 598.73 acres in Lamar County and the other consisting of 281.73 acres in Red River County. The Antones borrowed approximately $20,000.00 from Banker's Life Insurance Company (Banker's) and used the 598.73–acre tract in Lamar County as collateral. In 1953, the Antones borrowed an additional $13,860.00 from Deport State Bank (Deport). As collateral for the second loan, the Antones placed the 281.73–acre tract in Red River County and 386.25 acres of the tract in Lamar County into a deed of trust, making Deport a second lienholder with respect to the 386.25 acres located in Lamar County. The deed of trust named Tom Jeffus, in his individual capacity, as trustee.[1]

In 1955, the Antones defaulted on the second loan and deeded both tracts to Tom Jeffus in his individual capacity. In exchange, Tom Jeffus agreed to assume all of the Antones' outstanding debt to Banker's and Deport, and the Antones retained a vendor's lien on the property until both loans had been paid. In order to pay the debt owed to Deport, Tom Jeffus sold the 281.73–acre tract in Red River County to Joe Antone, John Antone's brother, for $9,913.40.[2] After receiving the proceeds from that sale, Deport issued a partial release of lien and declared the obligation paid. Further, in 1962, Tom Jeffus procured a loan from Prudential Insurance Company and gave the Lamar County tract as collateral for that loan. The proceeds from that loan were used to pay the outstanding debt owed to Banker's. Accordingly, on January 25, 1962, Banker's executed a release of its lien on the Lamar County tract and declared its Antone obligation paid. Through a series of payments made by Tom Jeffus and his successors, Prudential executed a release of its lien on the Lamar County tract in 1980.

In 1999, Belinda A. Zanfardino, daughter of Virginia Antone and granddaughter of John Antone, came under the impression, after reviewing the documentation of the above transactions, that Tom Jeffus had fraudulently induced her mother and grandfather into deeding those tracts to him.[3] Accordingly, Zanfardino contacted the title company to assert her claim to the property. At that time, the Lamar County tract was in the possession of Tom Jeffus' grandson, Hugh L. Jeffus, Jr. (Appellee). Appellee claims that, because Zanfardino created a cloud on the title, Appellee was

1. Tom Jeffus was also president of Deport at the time this deed of trust was executed.

2. In the record is a check in that amount apparently written by John Antone, but Zan-

fardino's affidavit concludes that it must have represented proceeds from the sale.

3. By 1999, the Antones were both deceased.

unable to sell the tract. Appellee brought this suit against Zanfardino to clear title and to seek damages for loss of sale. Zanfardino defended on the basis of fraud.

Appellee filed a motion for summary judgment asserting (1) his legal title was undisputed, and (2) there was no evidence Zanfardino had any claim to the title. In his motion for summary judgment, Appellee argued his title was good as a matter of law because there was no evidence supporting Zanfardino's fraud claim and any such claim would be barred by limitations and adverse possession.

The trial court granted a partial summary judgment in favor of Appellee on the title issue and severed Appellee's slander of title claim against Zanfardino, making the summary judgment final and appealable. On appeal, Zanfardino asserts summary judgment was improper because fact issues exist as to: (1) whether the land had been acquired fraudulently, (2) whether the statute of limitations barred Zanfardino's claims, and (3) whether Appellee had a valid adverse possession claim. We affirm.

On appeal, summary judgment is reviewed de novo in accordance with the following standards: (1) the movant has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference and any doubts must be resolved in the nonmovant's favor. *Limestone Prods. Distrib., Inc. v. McNamara,* 71 S.W.3d 308, 311 (Tex.2002). A no-evidence motion for summary judgment is essentially a pretrial directed verdict, so we apply the same standard of review as in reviewing a directed verdict, viewing all evidence in the light most favorable to the nonmovant and disregarding all contrary evidence and inferences. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750, 2003 WL 22025017, 2003 Tex. LEXIS 242, at *16 (Tex. Aug. 28, 2003); *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997).

[A] no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. Tex.R. Civ. P. 166a(i); *Wal–Mart,* 92 S.W.3d at 506. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/ Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms.,* 953 S.W.2d at 711.

*Chapman,* 118 S.W.3d at 751, 2003 Tex. LEXIS 242, at *17.

When the order granting summary judgment fails to specify the reason for granting the motion, an appellant must show that each individual ground for summary judgment raised in the motion would be insufficient to support summary judgment. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000). On the other hand, summary judgment must be affirmed if any of the grounds raised in the motion are meritorious. *Id.* We hold each of the three grounds were meritorious.

Zanfardino contends Tom Jeffus defrauded the Antones out of the property and, furthermore, as trustee under the deed of trust, owed a fiduciary duty to the Antones. Zanfardino also contends Tom Jeffus was guilty of self-dealing because he

took both the Red River and Lamar County tracts personally, instead of in his representative capacity for Deport.

◼ To establish a fact question on her fraud claim, Zanfardino must have presented more than a scintilla of competent summary judgment evidence of each of the following elements of fraud: (1) that Tom Jeffus made a material, false representation, (2) that he knew was false or that he made recklessly as a positive assertion without any knowledge of its truth, (3) intending to induce the Antones to act on the representation, and (4) on which the Antones actually and justifiably relied, thereby suffering injury. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex.2001). We have carefully examined the summary judgment evidence and find no evidence to raise a fact question as to any of those elements of a fraud cause of action. Therefore, there is no evidence to support Zanfardino's fraud claim.[4]

◼ In Zanfardino's "Affidavit of Fact" offered to resist Appellee's motion for summary judgment, she offered various statements which might be argued were evidence of fraud. Each statement that might be argued to tend to prove that Tom Jeffus defrauded the Antones, however, was either conclusory, speculative, hearsay, or simply not evidence of any element of such a fraud claim. Before the trial court, Appellee objected to Zanfardino's affidavit in its entirety.

Zanfardino claims Tom Jeffus fraudulently procured the property by taking more land than was necessary to pay the debt owed to Deport. Specifically, Zanfardino claims Tom Jeffus misrepresented the value of the land secured by the deed of trust and convinced the Antones to deed both tracts in exchange for his assumption

---

4. Even if there had been evidence of fraud, we believe the trial court's summary judgment was proper on the basis of the statute of limitations and of adverse possession. The documentation found by Zanfardino and other information recounted in her affidavit was information of which the Antones were actually aware or on notice.

A four-year limitations period applies to a fraud cause of action. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (Vernon 2002). Fraud, however, prevents the running of the statute of limitations until it is discovered or, by exercise of reasonable diligence, it might have been discovered. *Velsicol Chem. Corp. v. Winograd,* 956 S.W.2d 529, 531 (Tex.1997). Parties have actual knowledge if they have personal knowledge of the terms in the deed. *City of Houston v. Muse,* 788 S.W.2d 419, 422 (Tex.App.-Houston [1st Dist.] 1990, no writ). Even if, before signing the deed, the Antones believed they would be asked to convey all or only part of the property to Deport, they had actual notice when they signed the deed in 1955 that Tom Jeffus was taking title to all of the property in his individual capacity. *See Mooney v. Harlin,* 622 S.W.2d 83, 85 (Tex. 1981).

Under the Texas Civil Practice and Remedies Code, adverse possession is defined as "actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM.CODE ANN. § 16.021 (Vernon 2002). The only issue in dispute is when limitations began to run. When a deed reserves a vendor's lien, possession of the vendee is not adverse to the superior title of the vendor, and the statute of limitations for adverse possession does not begin to run until the vendor's lien is released, or the vendee gives the vendor unequivocal notice of repudiation of the vendor's superior title. *Calverley v. Gunstream,* 497 S.W.2d 110, 115 (Tex.Civ. App.-Dallas 1973, writ ref'd n.r.e.). In 1955, Deport issued a partial release of lien and therein declared its note paid. In 1962, Banker's released its lien and declared its note paid. We conclude the statute of limitations for adverse possession began to run in 1962, when the Antones no longer had a valid vendor's lien, and any Zanfardino claim to title of the land would have been barred by adverse possession regardless of whether the twenty-five-year or ten-year statute of limitations is applied.

of their debts. First, the only language in the summary judgment evidence suggesting that the sale of the Red River County tract would have been sufficient to satisfy the outstanding balance owed to Deport was the following statement made by Zanfardino in her affidavit:

> On May 7, 1955, my Grandfather and Mother drove from Dallas to [Deport] to pay their three notes in full. They met with the President of the Bank and Trustee, Tom Jeffus. When the Antones left their apartment in Dallas that morning, they did not believe they would have to deed all of their land to the Bank. They believed that the land in Red River County and the herd of cattle covered by the Chattel mortgage would satisfy the balance at the Bank.

Zanfardino's statement is both hearsay and conclusory, and it is insufficient to raise a genuine issue of material fact. *See* Tex.R. Evid. 801; *Life Ins. Co. v. Gar–Dal, Inc.*, 570 S.W.2d 378 (Tex.1978); *Gracey v. West*, 422 S.W.2d 913, 916 (Tex.1968).

■ There is no evidence in the record that Tom Jeffus ever made any representations to the Antones concerning the value of the two tracts. The only proposal found in the record was that Tom Jeffus agreed to assume the Antones' debts to Banker's and Deport in exchange for the Lamar and Red River County tracts. An agreement to assume a debt is a prospective promise to perform, not a misrepresentation of fact that could support a fraud claim unless accompanied by proof that, at the time of the promise, the promisor intended not to perform. *Cent. Sav. & Loan Ass'n v. Stemmons Northwest Bank, N.A.*, 848 S.W.2d 232, 240 (Tex.App.-Dallas 1992,

no pet.). There is no such evidence in this record.

■ In support of her contention that Tom Jeffus' position as trustee under the deed of trust created a confidential relationship between him and the Antones, Zanfardino relies on *First Fed. Sav. & Loan Ass'n v. Sharp*, 359 S.W.2d 902, 904 (Tex.1962). Zanfardino's reliance on *Sharp*, however, is misplaced. The *Sharp* decision merely stands for the proposition that a trustee in the deed of trust forecloses thereunder as the special agent for both the mortgagor and the mortgagee, and has a duty to conduct any foreclosure sale in a fair and impartial manner and in accordance with the terms of the trust instrument. In the present case, Tom Jeffus was never asked to foreclose on the land in question, nor did a foreclosure ever take place. Further, since the *Sharp* decision, courts have consistently held that the trustee in a deed of trust does not owe a fiduciary duty to the mortgagor. *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 837 (Tex. App.-Houston [14th Dist.] 2000, pet. denied); *First State Bank v. Keilman*, 851 S.W.2d 914, 925 (Tex.App.-Austin 1993, writ denied); *see also Castillo v. First City Bancorporation of Tex.*, 43 F.3d 953, 960 (5th Cir.1994) (applying Texas law); *FDIC v. Myers*, 955 F.2d 348, 350 (5th Cir.1992) (applying Texas law). Accordingly, Tom Jeffus did not owe a fiduciary duty to the Antones by virtue of his office as trustee in the deed of trust.[5]

A case very recently decided by the Texas Supreme Court disposed of similarly ancient claims to an interest in the King Ranch property. *See Chapman*, 118 S.W.3d 742, 2003 Tex. LEXIS 242. The claims in that case challenged the validity

---

5. Zanfardino also relies on Section 113.053 for the proposition that trustees may not purchase trust property for themselves. *See* Tex. Prop.Code Ann. § 113.053 (Vernon 1995).

That portion of the Code, however, expressly provides that it does not apply to "a security instrument such as a deed of trust...." Tex. Prop.Code Ann. § 111.003 (Vernon 1995).

of a 100–year–old land title settlement by asserting extrinsic fraud and claimed title to land through a trespass to try title claim, while the claims in the case before us challenge the validity of a forty-eight-year-old deed based on alleged fraud passing between now-deceased ancestors of the parties. Nevertheless, the language used by the Texas Supreme Court in disposing of the Chapman claims rings true in further support for our disposition of the claims in this case.

[W]e conclude that "time, which buries in obscurity all human transactions, has achieved its accustomed effects upon this." *Prevost v. Gratz,* 19 U.S. (6 Wheat.) 481, 495, 5 L.Ed. 311 (1821). In this case, the Chapman heirs have cobbled together a series of interesting historical tidbits and Texas folklore in an effort to regain title to one-half of the Rincon—an interest they claim is worth a substantial sum. Viewed separately, each of these tidbits fails to provide evidence of King's extrinsic fraud, and aggregated, they fare no better. While anything more than a scintilla of evidence is legally sufficient to survive a no-evidence summary judgment motion, "some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence." *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 927 (Tex.1993); *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983) ("When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence."). The Chapman heirs' extrinsic fraud claims are supported, in large part, by the absence of evidence—the dearth of complete records one hundred twelve years after judgment was entered, and the unavailability of any living witness to testify to the events at issue. The heirs urge us to second guess, with benefit of hindsight, the wisdom of settling ancient litigation. We decline to do so. As we recognized in 1857, we must apply a presumption in favor of ancient judgments, particularly those involving land titles, lest the passage of time destroy them. *Baker,* 20 Tex. at 437. We cannot conclude that conspiracy theories—fascinating but unsupported by evidence—may be used to upend a one hundred twenty year old judgment quieting title to the property. Because the Chapman heirs failed to produce even a scintilla of evidence of Richard King's alleged extrinsic fraud, their bill of review fails.

*Chapman,* 118 S.W.3d at 755, 2003 Tex. LEXIS 242, at *29–31. Zanfardino has likewise "cobbled together" fascinating theories and suspicions, unsupported by any evidence of fraud by Tom Jeffus against the Antones. Such theories, without evidence, cannot be used to defeat long-standing title to property.

There is no evidence Tom Jeffus fraudulently induced the Antones to deed the two tracts to him. We overrule Zanfardino's point of error and affirm the judgment of the trial court.