

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00051-CV

_____

WARREN WHISENHUNT, Appellant

V.

MATTHEW LIPPINCOTT AND CREG PARKS, Appellees

On Appeal from the County Court at Law
Hopkins County, Texas
Trial Court No. CV41303

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion on Remand by Justice Moseley

## OPINION ON REMAND

Warren Whisenhunt, a certified registered nurse anesthetist, brought suit against Matthew Lippincott and Creg Parks, both administrators at First Surgery Suites, LLC (FSS). In his suit, Whisenhunt alleged that Lippincott and Parks had made disparaging remarks about him to others and, in doing so, had defamed him, had tortuously interfered with existing business relationships and with prospective business relationships, and had engaged in a civil conspiracy against him.

Lippincott and Parks responded by claiming protection under the Texas Citizens Participation Act (TCPA),[1] which is designed to "protect[] citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579 (Tex. 2015) (orig. proceeding); *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2014). Arguing that Whisenhunt's lawsuit was frivolous and aimed at preventing their exercise of free speech, Lippincott and Parks employed the TCPA's pre-discovery dismissal mechanism (which requires a plaintiff to make a prima facie case on each claim by "clear and specific evidence" to avoid dismissal and the imposition of attorney fees and sanctions). Applying the TCPA, the trial court dismissed all of Whisenhunt's claims except the claim for defamation and awarded attorney fees to Lippincott and Parks.

---

[1]"Statutes like Chapter 27 are commonly known as 'anti-SLAPP statutes' because they are intended to curb 'strategic lawsuits against public participation.'" *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 868–69 (Tex. App.—Dallas 2014, no pet.) (quoting Dena M. Richardson, Comment, *Power Play: An Examination of Texas's Anti-SLAPP Statute and ITS Protection of Free Speech Through Accelerated Dismissal*, 45 ST. MARY'S L.J. 245, 246–48, 252–55 (2014)).

2

On appeal, Whisenhunt argues (1) that the TCPA violates the Texas open-courts provision, (2) that the trial court erred in denying his limited motion for discovery, (3) that the trial court erred in dismissing some of his claims because the TCPA commercial speech exemption applies to this case, and (4) that the trial court erred in concluding that Whisenhunt failed to make a prima facie case for his tortious interference and conspiracy claims.[2]  By way of cross-appeal, Lippincott and Parks argue that the trial court erred in concluding that Whisenhunt made a prima facie case for defamation and erred in failing to award sanctions to which they claim they were entitled under the TCPA.

We find that Whisenhunt failed to preserve his first two points of error for our review.  We also conclude that the commercial speech exemption does not apply to this case and that the trial court did not err in concluding that Whisenhunt failed to make a prima facie case for his dismissed claims.  We also conclude that we have no jurisdiction over Lippincott and Park's cross-appeal.  Accordingly, we affirm the trial court's judgment.

## I.      Factual Background

At all times relevant to his lawsuit, Whisenhunt was a member and the Vice President of SafeNET Anesthesia Services, P.L.L.C. (SafeNET).  SafeNET became "an independent contractor

---

[2]Whisenhunt also argued that because it protects "communication made in connection with a matter of public concern," the TCPA did not apply to lawsuits based on defamatory statements made solely in private communications that had not been published to the public. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001.  For several reasons set forth in our previous opinion on this appeal, we agree with Whisenhunt. *See generally Whisenhunt v. Lippincott*, 416 S.W.3d 689 (Tex. App.—Texarkana 2013), *rev'd* No. 13-0926, 2015 WL 1967025, at *1 (Tex. Apr. 24, 2015) (per curiam).  However, the Texas Supreme Court resolved Whisenhunt's point of error against him by holding that "[t]he plain language of the statute imposes no requirement that the form of the communication be public." *Lippincott*, 2015 WL 1967025, at *2.

and exclusive provider of anesthesiology services for" FSS. Whisenhunt was also a partner in FSS and owned approximately five percent of that company.

In May 2010, Lippincott was hired as an administrator for FSS and immediately suggested that his anesthesiologist wife perform anesthesiology services at FSS, despite its exclusive contract with SafeNET. FSS hired Parks and his company, Alliance Managed Healthcare, L.L.C. (AMH), in January 2011 to administer the business of FSS. In the management operation, Parks was subordinate to Lippincott, and "the two began jointly managing the daily operations and administration of FSS."

Whisenhunt's petition alleged that Lippincott was an employee or partner of AMH and that "[s]hortly after Parks' assumption of the position, both Defendants proposed replacing SafeNET with another anesthesiology provider at FSS," which Whisenhunt characterized as "an anticipated breach of the companies' exclusive anesthesia services contract." In May 2011, Parks and Lippincott allegedly contacted third parties and interviewed alternative providers of anesthesia services, "pressuring Whisenhunt to alter the exclusivity provisions of the contract with FSS." The petition claimed that Parks told members of FSS and three other parties that Whisenhunt was responsible for the loss of surgical patients at FSS.

Parks was terminated by FSS March 28, 2012. Whisenhunt's petition claims that this termination was brought about when the partners in FSS came to the conclusion that Parks had "grossly mismanaged collections as well as other acts of incompetence." Whisenhunt's petition claimed that Parks and Lippincott continued publishing disparaging comments about Whisenhunt to others interested in conducting business with him even after Parks' termination, including

4

charges that Whisenhunt had sexually harassed the facility's nurses, had engaged in fraudulent behavior, was unavailable for surgeries, and was incompetent as an anesthetist. Attached to Whisenhunt's petition were copies of internal emails which had been sent by Lippincott, some of which (sent in May 2012) contained the following language:

> Most recently multiple departing employees have made the following statements to me, and I am under the impression that they have filed reports to this effect with Board of Nursing and other regulatory groups, but I have no idea how to confirm that. Also, I have no idea if these are to be treated as unsubstantiated claims from individuals, or if there are obligations for FSS to handle them in a certain way:
>    • SafeNet owner representing self to be a physician - witness statement only.
>    • Continued violation of sterile protocol policy - witness statement only.
>    • SafeNet owner endangering patients for personal financial gain by ordering staff to proceed with cases when during pre op it is discovered that patients have eaten recently or have cardiac issues that should be assessed first. - witness statement only.
>    • Obstruction of reporting processes and corrective action - witness statements
>    • Reports of harassment going undocumented. - witness statements

> Other reports on file, some or all of which may have been submitted to the Board of Nursing:

> Incident reporting form #00001
> States that falsification of scrub tech record on 11/2/2010 and 12/17/2010 was at the direction of Administrator and Director of Nursing Warren Whisenhunt, (not sure if Warren still had the DoN[3] title at this time but the report describes him as such). States that Maria and Leigh Ann Simpson were instructed to do this by Warren. Report prepared by Maria and signed by Maria, Leigh Ann, Josh Green and Tina Bullard. It is not specifically stated when Tina learned of this, and who told her about it.

---

[3]From the context, it appears that the acronym DoN, as used here, stands for Director of Nursing.

Incident reporting form #00004
States that on 2/3/2011 Warren left before a 1 year old child had met discharge criteria. It was prepared by Leigh Ann and signed by Maria and Janet.

Incident reporting form #00005
States that on 3/31/2011 Warren failed to provide adequate coverage for pediatric cases. It was prepared and signed by Maria.

Incident reporting form #00006
States that Warren placed an IV when Tina was supposed to do so, in addition to administering a different narcotic than was ordered prior to pre-op or patient consent being completed. It was prepared by Leigh Ann and is signed by Leigh Ann and Tina.

Other reports for which there are some records such as written statements and/or presumably Board of Nursing complaint records:

• Witnesses supported reports of workplace sexual harassment and unwanted physical contact by a superior and attempts to make inappropriate contact with employee outside of the workplace. - multiple witness statements, emails, etc.
• Reports of collecting cash and checks from patients and ordering employees not to make receipts or other records were witnessed and reported by multiple employees, several of which are still employed.
• Participation in allowing the hiring of an employee ineligible for employment due to criminal record.

Issues reported and documented by staff that the DoN is responsible for preventing. Scans of chart, log and other documents have been provided and can be made available:

• 2 reports of wrong physician name on consent.
• Reports of patient arm bands not being used.
• Required confirmation from DoN of completion of patient order and chart review, etc. not provided as required by policy.
• Chart status, case detail, etc. not recorded anywhere less than 24 hours before case is scheduled to begin.
• Failure to comply with DoN chart & case review/"Check off" requirement for all cases.
• Cscope patient who was fed when he should not have been preoperatively, causing him to become ill. Reported by third party medical staff.

- 2 hour wait by patient in pre-op with no one coming to check on her. (hand written report), when reported to FSS owners DoN and Administrator took action making it very difficult for any incidents like this to be identified and reported to the Medical Executive Board, QAPI or other entities.
- Pre-initialing central scheduling sheets before patient and other data had been received, reviewed, etc.

. . . .

Some of the supporting documents available include:

2 reports of wrong physician name on consent. Example shows Dr. Hester referenced at the top of the page and Dr. Hackbarth (the physician providing the treatment) at the bottom.
Scan # 102313
Scan # 102303

Reports of patient arm bands not being used.
Scan # 102239

Required confirmation from DoN of patient order review, completion, etc. not provided as required by policy. Patient case scheduled without these steps completed.
Scan # 155528

Chart status, case detail, etc. not recorded anywhere less than 24 hours before case begins - and several days after cases had been scheduled. In this example there was none of the required data available as of 4/16 for 6 cases that took place on 4/17.
Scan # 155341

Failure to comply with DoN chart & case review/"Check off" requirement for all cases, prior to cases being scheduled.
Scan # 155441
Scan # 155152

Following attachment was sent after the cases listed were performed (showing that the documentation was still incomplete):
Scan # 155252, 123409, 123458, 123545, 123649, 123718, 123328, 123344

7

Despite having nearly 8 months to complete the work, little to nothing has been completed for infection control programs and other survey preparedness activities.[4]

Complaining of the alleged falsity of the various unsavory statements about him, Whisenhunt filed suit against Lippincott and Parks on November 16, 2012, claiming that they had defamed him, that they had tortiously interfered with his existing and prospective business relationships, and that they had conspired to interfere in business relationships.[5] To ratify his claim of the untruthfulness of the statements, Whisenhunt produced an affidavit from Gary Boyd, a physician and the Medical Director of FSS, stating that FSS received no formal or informal complaints against Whisenhunt until after Parks' firing and that FSS had terminated its contractual relationships with AMH. Boyd stated that FSS was "very happy with the quality of the nurse anesthesia services that ha[d] been provided by [SafeNET] [and] Whisenhunt" and described Whisenhunt as "very professional."

Lippincott and Parks moved to dismiss the suit January 13, 2013, interposing the TCPA as a bar to Whisenhunt's claims. The filing of such a motion abates any discovery until the issue of the TCPA's applicability is resolved.

---

[4]Whisenhunt also alleged that Parks and Lippincott filed a false allegation against him with the Texas State Board of Nursing. This allegation was denied.

[5]Lippincott and Parks' answer to the suit invoked the TCPA and claimed that the communications were privileged, that the defamation claim was barred by the statute of limitations, and that Whisenhunt was not entitled to recover as an individual on a contract executed by SafeNET since SafeNET was not a party to the suit.

Whisenhunt responded to the motion to dismiss by arguing the inapplicability of the TCPA and claiming two things, alternatively. First, Whisenhunt claimed that the following exception in the statute applied to his suit:

> This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, Sec. 27.010(b), 2011 Tex. Gen. Laws 961, 964 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b) (West 2015)). Second, he claimed that even if the TCPA was applicable to the suit he had brought, the trial court could not dismiss the action because he could establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, Sec. 27.005(c), 2011 Tex. Gen. Laws 961, 963 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) (West 2015)).

The trial court ruled on this controversy by letter order penned March 4, 2013, wherein it found that Whisenhunt "met the minimum threshold to proceed with the defamation cause of action," but did not "provide clear and specific evidence to proceed with the tortious interference claims and the claim of conspiracy." On March 15, 2013, the trial court denied the motion to dismiss "with regard to Plaintiff's claim for Defamation," but granted the motion to dismiss "with regard to Plaintiff's claims for Tortious Interference with Existing Business Relationships, Tortious Interference with Prospective Business Relationships and Conspiracy to Interfere with

9

Business Relations." The trial court also awarded court costs and $2,887.50 in attorney fees[6] to Lippincott and Parks based on their written claim for fees and their attorney's affidavit.

## II. Whisenhunt Failed to Preserve a Texas Open-Courts Provision Issue

The Texas open-courts provision reads, "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. Whisenhunt questions whether the TCPA violates the Texas Constitution's open-courts provision.

"As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1(a)(1). "A litigant must raise an open-courts challenge in the trial court." *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222 (Tex. 2002) (citing *S.V. v. R.V.*, 933 S.W.2d 1, 25 (Tex. 1996)); *Bustillos v. Jacobs*, 190 S.W.3d 728, 732 (Tex. App.—San Antonio 2005, no pet.); *see Martinez v. Abbott Laboratories & Abbott Labs., Inc.*, 146 S.W.3d 260, 268–69 (Tex. App.—Fort Worth 2004, pet. denied). Our review of this appellate record demonstrates that at the trial court level, Whisenhunt failed to raise the issue of whether the TCPA violates the open-courts provision of the Texas Constitution. A party to a lawsuit waives the right to raise even a constitutional claim

---

[6]The version of Section 27.009 of the Texas Civil Practice and Remedies Code in effect at the time the trial court entered its order stated that court costs and reasonable attorney fees "shall" be awarded to the moving party "[i]f the court orders dismissal of a legal action under this chapter." Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, Sec. 27.009(a)(1), 2011 Tex. Gen. Laws 961, 963 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1) (West 2015)). The Texas Civil Practice and Remedies Code defined a "legal action" as a "lawsuit, cause of action, petition, complaint, cross-claim or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, Sec. 27.001(6), 2011 Tex. Gen. Laws 961, 962 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6) (West 2014)).

on appeal if that claim is not presented to the trial court. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 377 (Tex. 2009) (citing *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001)); *see* TEX. R. APP. P. 33.1(a).

Accordingly, this issue is not preserved for our review, and we overrule it.

### III. Question of Whether Trial Court Erred in Failing to Grant a Motion for Limited Discovery Was Not Preserved

On the filing of a motion to dismiss under the TCPA, "all discovery in the legal action is suspended until the court has ruled on the motion to dismiss" unless the court specifically allows for "limited discovery relevant to the motion" on a showing of good cause.[7] Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, Sec. 27.003(c), 2011 Tex. Gen. Laws 961, 963 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(c) (West 2014)); Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, Sec. 27.006(b), 2011 Tex. Gen. Laws 961, 963 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(b) (West 2014)). Whisenhunt argues that the trial court erred in failing to grant his request for limited discovery.

Lippincott and Park's motion to dismiss under the TCPA was filed January 31, 2013. Under the applicable version of the Texas Civil Practice and Remedies Code, a hearing under that Act was required to be held "not later than the 30th day after the date of the service of the motion." Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, Sec. 27.004, 2011 Tex. Gen. Laws 961, 963

---

[7]Whisenhunt argues that he had good cause because Lippincott "was dodging service." Lippincott and Parks respond by stating, "Whisenhunt made no showing of due diligence in attempting to procure evidence in support of his claims in advance of filing his lawsuit, or even after the filing. Whisenhunt did not serve any discovery with his original petition or during the forty-one days after both defendants answered and before they filed their motion to dismiss. Therefore, he did not establish good cause." (Footnote omitted).

11

(amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.004 (West 2014)).

Whisenhunt contends that he moved the trial court to allow for limited discovery in the following

section of his response to Lippincott and Parks' motion to dismiss, labeled "Alternative Relief,"

which was filed February 15, 2013—the same date as the hearing on the motion to dismiss:

> Alternatively, on a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion. TEX. CIV. PRAC. & REM. CODE [ANN.] § 27.006(b).  Therefore, if the Court finds that the Defendants have met their burden by a preponderance of the evidence [to demonstrate that the TCPA applies] (which they have failed to do), *and* that the statements were not commercial speech (which they were), *and* that Plaintiff has not made a prima facie showing as to defamation (which there is clear and specific evidence); Plaintiff asks the Court to allow sufficient time to conduct discovery in order to determine whether Defendants' statements were in fact free speech based upon the good cause discussed hereinabove.

(Emphasis added).[8]

During the hearing, Whisenhunt argued that the TCPA's discovery stay was the reason for

a lack of evidence related to damages:

> As counsel noted, this motion also suspended discovery, so the fact that he is saying that we don't have any evidence, well, we haven't had the ability to conduct discovery in order to get down to this evidence, especially with respect to damages, you know, to further support this claim.  At this point in time, we are unable to even send out discovery requests or obtain the deposition of either defendant in this case or any other fact witnesses that we assert are important and will greatly strengthen our case from what we already have now.  So I think it's a little disingenuous to say there's no evidence when we have not had the ability to conduct discovery in this matter.

---

[8]A plain reading of the motion suggests that Whisenhunt was only requesting limited discovery in the event the trial court found that he had not made a prima facie showing as to defamation.  The trial court found that Whisenhunt made a prima facie case of defamation.

12

Although Whisenhunt continued to argue that he needed to conduct discovery and informed the court that he was "making that motion right now that if you choose not to dismiss defendants' motion outright that you open discovery in this matter for the limited purpose of gathering this information to help the prima facie case," no ruling was made by the trial court.

In order to preserve error, a request for relief must be timely made. *See* TEX. R. APP. P. 33.1.(a)(1). Whisenhunt waited to ask for limited discovery until the very day of the hearing in which he was supposed to present his prima facie case and further failed to request a continuance of the hearing so that limited discovery could be conducted. We believe Whisenhunt's motion for limited discovery was untimely.

Moreover, although the court had thirty days from the date of the hearing in which to rule on the motion to dismiss, *see* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, Sec. 27.005, 2011 Tex. Gen. Laws 961, 963 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.005 (West 2015)), Whisenhunt neither further urged the motion nor secured any ruling on his motion for discovery.[9] Rule 33.1 of the Texas Rules of Appellate Procedure states,

> (a)     As a prerequisite to presenting a complaint for appellate review, the record must show that:
>
> . . . .
>
> (2)     the trial court:
>
> (A)     ruled on the request, objection, or motion, either expressly or implicitly; or

---

[9]The court's partial dismissal was issued on March 15, 2013.

(B)     refused to rule on the request, objection, or motion,
and the complaining party objected to the refusal.

TEX. R. APP. P. 33.1(a)(2). Although Whisenhunt agrees that "the Trial Court did not expressly rule on [his] request for discovery," he argues that the "request can be deemed impliedly denied."

"When a trial court's express ruling on one motion necessarily implie[s] a contrary ruling on an opposing motion, the trial court may be deemed to have implicitly ruled on the opposing motion." *Parks v. Univ. of Tex. Med. Branch*, No. 06-10-00127-CV, 2011 WL 2520229, at *1 (Tex. App.—Texarkana June 24, 2011, no pet.) (mem. op.). Conversely, where a trial court's ruling does not necessarily dispose of another motion, a finding should not be implied. *See Am. Idol Gen., LP v. Pither Plumbing Co.*, No. 12-14-00134-CV, 2015 WL 1951579, at *2 (Tex. App.—Tyler Apr. 30, 2015, no pet.) (discussing why, in most circumstances, granting of summary judgment motion, without more, does not provide implicit ruling that either sustains or overrules objections to summary judgment evidence). Here, the trial court's conclusion that Whisenhunt failed to make a prima facie case on his dismissed claims did not necessarily dispose of his motion for limited discovery because the court could have granted limited discovery, but still dismissed the claims. Therefore, the trial court's ruling on the motion to dismiss did not operate as an implicit denial of Whisenhunt's motion for limited discovery.

Because Whisenhunt's request for limited discovery was not made in a timely manner and because he failed to secure a ruling on that motion, we find that Whisenhunt failed to preserve his second point of error. *See Nguyen v. Dallas Morning News, L.P.*, No. 02-06-00298-CV, 2008 WL 2511183, at *2 (Tex. App.—Fort Worth Jun. 19, 2008, no pet.) (per curiam) (mem. op.); *Goodchild*

14

*v. Bombardier-Rotax GMBH Motorenfabrik*, 979 S.W.2d 1, 6–7 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (op. on reh'g) (holding appellant failed to preserve error on motion to compel limited jurisdictional discovery where trial court never ruled on motion and appellant failed to object to refusal to rule, even though trial court eventually granted special appearance).

We overrule Whisenhunt's second point of error.

## IV. The Commercial Speech Exception Does Not Apply to Whisenhunt's Lawsuit

The version of Section 27.010(b) of the Texas Civil Practice and Remedies Code applicable to this lawsuit stated that the TCPA

> does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, Sec. 27.010(b), 2011 Tex. Gen. Laws 961, 964 (amended 2013). "This subsection can be described as a 'commercial speech' exception." *Miller Weisbrod, L.L.P. v. Llamas-Soforo*, No. 08-12-00278-CV, 2014 WL 6679122, at *6 (Tex. App.— El Paso Nov. 25, 2014, no pet.). Here, we must determine whether Lippincott and Parks were primarily engaged in the business of selling or leasing goods or services.

Whisenhunt argues that the commercial speech exemption applies to the allegedly disparaging communications made by Lippincott and Parks. Specifically, he contends (1) that Lippincott, administrator of FSS, sold FSS's services (which included SafeNET's exclusive anesthesiology services) to the public and that Parks, who was an administrator for AMH, sold administrative services to FSS through AMH; (2) that the allegedly actionable statements made by

15

them to third parties arose out of the sale of services; and (3) that the audience for the communications was FSS and other potential customers of Whisenhunt's business. "Generally, '[t]he burden of proving a statutory exception rests on the party seeking the benefit from the exception.'" *Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc.*, 402 S.W.3d 299, 309 (Tex. App.—Dallas 2013, pet. denied) (quoting *City of Houston v. Jones*, 679 S.W.2d 557, 559 (Tex. App.—Houston [14th Dist.] 1984, no writ)); *see Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 89 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

Lippincott and Parks were simply administrators for FSS. Despite Whisenhunt's allegations, the record is unclear as to whether Lippincott and Parks actually sold or leased FSS's surgical services or SafeNET's anesthesiology services. We find that Lippincott's and Parks' titles as administrators do not suggest that they were primarily engaged in the business of selling FSS or SafeNET's services.

Also, the commercial speech exception "has been construed to mean that for the exemption to apply, the statement must be made for the purpose of securing sales in the goods or services of the person making the statement." *Backes v. Misko*, No. 05-14-00566-CV, 2015 WL 1138258, at *10 (Tex. App.—Dallas Mar. 13, 2015, no pet.) (citing *Newspaper Holdings*, 416 S.W.3d at 88–89).[10] Although Whisenhunt alleges that Parks sold AMH's administrative services to FSS and

---

[10]In applying the exemption, *Newspaper Holdings* stated that courts should consider whether:

> (1)    the cause of action is against a person primarily engaged in the business of selling or leasing goods or services;
> (2)    the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services;

16

that Lippincott was affiliated with AMH,[11] neither SafeNET nor Whisenhunt were engaged in the business of selling administrative services. Instead, Whisenhunt and SafeNET provided anesthesiology services. Thus, disparaging comments about Whisenhunt or SafeNET could not have been made for the purpose of securing sales of AMH's services, since AMH was in competition with neither Whisenhunt nor SafeNET. With respect to allegations that Lippincott and Parks suggested that FSS should consider employing the services of other anesthesiology providers (including Lippincott's wife), nothing shows that such statements were made for the purpose of securing sales in the types of services in which Lippincott and Parks were engaged. *See Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *6 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.). Moreover, Whisenhunt does not explain how the comments made about him or SafeNET arose out of the sale of Lippincott's or Parks' services[12] or that the statements were made to their potential customers, as opposed to his potential customers. *See Newspaper Holdings*, 416 S.W.3d at 89; *BH DFW, Inc.*, 402 S.W.3d at 309.

---

(3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and
(4) the intended audience for the statement or conduct [is an actual or potential buyer or customer].

416 S.W.3d at 88–89 (citing *Simpson Strong-Tie Co. v. Gore*, 230 P.3d 1117, 1123 (Cal. 2010)).

[11]AMH and FSS are not parties to this case.

[12]The emails do not appear to be communications that arose from the sale or lease of services. Because the statements in the emails were intercompany e-mails, it appears that the intended audience was merely FSS management or someone responsible for reviewing the veracity of the disparaging comments made against Whisenhunt in the emails. *See Schimmel v. McGregor*, 438 S.W.3d 847, 854–58 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Pena v. Perel*, 417 S.W.3d 552, 555 (Tex. App.—El Paso 2013, no pet.).

Based on this record, we find that Whisenhunt failed to meet his burden to prove that the commercial speech exception applied to this case.

## V. Whisenhunt Failed to Make a Prima Facie Case on His Dismissed Claims

Because the TCPA applied to Whisenhunt's claims, upon the filing of a motion to dismiss, the burden shifted to him to "'establish[] by clear and specific evidence a prima facie case for each essential element of the claim[s] in question.'" *Lipsky*, 460 S.W.3d at 587 (quoting Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, Sec. 27.005(c), 2011 Tex. Gen. Laws 961, 963 (amended 2013)). "[A] 'prima facie case' . . . refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* at *6. "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam)). The language requiring clear and specific evidence "does not impose an elevated evidentiary standard or categorically reject circumstantial evidence." *Id.* at *7. However, "mere notice pleading—that is, general allegations that merely recite the elements of a cause of action—will not suffice." *Id.* For example, "[i]n a defamation case that implicate[s] the TCPA, pleadings and evidence that establish[] the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Id.* "In determining whether the plaintiff's claim should be dismissed, the court is to consider the pleadings and any supporting and opposing affidavits." *Id.* at *3 (citing Act of May 21, 2011, 82d

18

Leg., R.S., ch. 341, § 2, Sec. 27.006(a), 2011 Tex. Gen. Laws 961, 963 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a) (West 2014)).

Whisenhunt argues that the false allegations in Lippincott's email to Reta Turner, Joe Zasa, and Brenda Meyers demonstrate willfulness to tortiously interfere with the exclusive contract between SafeNET and FSS. Whisenhunt also points to allegations in the pleadings that Lippincott and Parks invited SafeNET competitors to tour the facilities and made disparaging remarks about Whisenhunt to physicians, FSS, and third parties. He also notes that his petition claimed that both Lippincott and Parks collaborated in inviting third parties to take tours of FSS and in defaming him.[13]

The elements of tortious interference with an existing business relationship[14] "are (1) the existence of a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of plaintiff's damages, and (4) actual damage or loss occurred." *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991); *see Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993).

> "To establish . . . tortious interference with prospective business relationships, a plaintiff must show that (1) there was a reasonable probability that the parties would have entered into a business relationship; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially

---

[13]Parks had already been fired from FSS before Lippincott sent the email containing the alleged defamatory statements.

[14]Lippincott and Parks question whether this cause of action exists. In support, they argue that the only cases cited by Whisenhunt involve tortious interference with an existing contract. Whisenhunt cites to authority stating that the tort applies to "interference with a continuing business or other customary relationship not amounting to a formal contract." In any event, both parties are in agreement as to the elements required to be proved.

19

certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference."

*Plotkin v. Jowkel*, 304 S.W.3d 455, 487 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Richardson–Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)); *see Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001). Independently tortious means "conduct that would violate some other recognized tort duty." *Sturges*, 52 S.W.3d at 713.

"An actionable civil conspiracy is a combination by 'two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.'" *In re Lipsky*, 411 S.W.3d 530, 549 (Tex. App.—Fort Worth 2013, orig. proceeding), *mand. denied*, 460 S.W.3d 479 (Tex. 2015) (quoting *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 701 (Tex. App.—Fort Worth 2006, pet. denied), *disapproved on other grounds by Ritchie v. Rupe*, 443 S.W.3d 856 (Tex. 2014)). "The essential elements of a civil conspiracy are '(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.'" *Id.* (quoting *Cotten*, 187 S.W.3d at 701).[15]

---

[15]"A defendant's liability for conspiracy depends on 'participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.'" *Lipsky*, 411 S.W.3d at 549 (quoting *Cotten*, 187 S.W.3d at 701). "Recovery for civil conspiracy is not based on the conspiracy but on the underlying tort." *Id.* (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (orig. proceeding)). "A civil conspiracy claim may be proved by circumstantial evidence and reasonable inferences from parties' actions." *Id.* (citing *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581 (Tex. 1963)); *see Lipsky*, 460 S.W.3d at 587.

All three causes of action require a showing of actual damage or loss, and the TCPA requires proof by clear and specific evidence of this element. In his brief, Whisenhunt argues that his petition "prove[s] causation and injury, [because it states] that Appellees' actions had 'devastating consequences,'" including "loss of good will, loss of renewal, loss of income and profits, and loss of value to his business reputation."[16] He argues that because he "pled his case under a Level 2 discovery control plan," his losses were valued at more than $50,000.00 and that this evidence "satisfy[ies] a minimum quantum of evidence that Appellees caused Whisenhunt to suffer damages." Whisenhunt also claims that he developed relationships with surgeons and "[t]here was a reasonable probability that these surgeons would have entered into a business relationship with [him]" if he had not been defamed.

Essentially, Whisenhunt argues that his pleadings must be taken as true and that they must be construed in a light most favorable to him. However, "pleadings that might suffice in a case that does not implicate the TCPA may not be sufficient to satisfy the TCPA's 'clear and specific evidence' requirement." *Lipsky*, 460 S.W.3d at 590. "[A] plaintiff must provide enough detail to show the factual basis for its claim," including how the "defendants damaged the plaintiff." *Id.* at 591. "[G]eneral allegations that merely recite the elements of a cause of action . . . will not suffice." *Id.* at 590.

---

[16]"Lost profits are damages for the loss of net income to a business measured by reasonable certainty." *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002). "Exact calculations" are not required to recover for lost profits. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 504 (Tex. 2001). "At a minimum[, however], opinions or lost-profit estimates must be based on objective facts, figures, or data from which the lost-profits amount may be ascertained." *Id.*

Additionally, "[b]are, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA." *Id.* at 592. Without more, allegations contained in an affidavit stating that a plaintiff suffered "'direct economic losses and "lost profits,"'" are only conclusory and do not constitute evidence. *Id.* (quoting *Lipsky*, 411 S.W.3d at 547); *see Coastal Transp. Co. v. Crown Cent. Petroleum*, 136 S.W.3d 227, 232 (Tex. 2004); *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam); *Wholesale TV & Radio Adver., LLC v. Better Bus. Bureau of Metro. Dallas, Inc.*, No. 05-11-01337-CV, 2013 WL 3024692, at *4 (Tex. App.—Dallas Jun. 14, 2013, no pet.) (mem. op.) (finding conclusory statements insufficient evidence of essential element in TCPA case); *Zanfardino v. Jeffus*, 117 S.W.3d 495, 497–98 (Tex. App.—Texarkana 2003, no pet.).

We conclude that Whisenhunt fell short of making a prima facie case. He filed no affidavit or pleading that provided the detail required by the TCPA as discussed in *Lipsky* to show how Lippincott and Parks damaged him. *See Lipsky*, 460 S.W.3d at 592. Moreover, Boyd's affidavit established that SafeNET still has its contract with FSS and failed to otherwise speak to damages. Whisenhunt also did not show that any surgeon failed to enter into a business relationship with him as a result of Lippincott's or Park's actions.[17]

---

[17]Under only the defamation cause of action, Whisenhunt's petition stated that "different clients in Plaintiff's profession have regarded the statements as true and have questioned continuing business relationships with Plaintiff, and, *upon information and belief*, have not been willing to enter into business relationships with Plaintiff." (Emphasis added). This language does not show actual damage or loss by clear and specific evidence.

Because there was no clear and specific evidence of the damage element presented, the trial court properly found that Whisenhunt failed to make a clear and specific case on his dismissed claims.

## VI. We Do Not Have Jurisdiction Over the Cross-Appeal

An interlocutory appeal is permitted from a signed order denying a dismissal under the TCPA. *Head v. Chicory Media, LLC*, 415 S.W.3d 559, 560–61 (Tex. App.—Texarkana 2013, no pet.) (citing Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, Sec. 27.008(a), 2011 Tex. Gen. Laws 961, 963 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.008(a) (West 2014)); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12) (West 2014). The version of Section 27.008(c) in effect at the time Lippincott and Parks filed their notice of cross-appeal stated, "An appeal or other writ under this section must be filed on or before the 60th day after the date the trial court's order is signed." Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, Sec. 27.008(c), 2011 Tex. Gen. Laws 961, 963, *repealed by* Act of May 24, 2013, 83d Leg., R.S., ch. 1042, § 5, 2013 Tex. Gen. Laws 2499, 2500.

The trial court's order was signed March 15, 2013. The notice of cross-appeal was filed May 23, 2013, beyond the deadline permitted by Section 27.008(c). *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, Sec. 27.008(c), 2011 Tex. Gen. Laws 961, 963. Typically, "if any party timely files a notice of appeal, another party may file a notice of appeal within the applicable period stated above or 14 days after the first filed notice of appeal, whichever is later." TEX. R. APP. P. 26.1(d). However, the deadlines and extensions for filing an appeal under Rule 26 of the Texas Rules of Appellate Procedure do not apply when a statute in the Texas Civil Practice and

Remedies Code provides a specific deadline for perfecting an appeal. *Jain v. Cambridge Petroleum Grp., Inc.*, 395 S.W.3d 394, 396 n.3 (Tex. App.—Dallas 2013, no pet.) (citing TEX. R. APP. P. 28.1(b) and reciting caselaw stating statutes authorizing interlocutory appeals are strictly construed because they are narrow exceptions to general rule that interlocutory orders are not immediately appealable); *see In re D.B.*, 80 S.W.3d 698, 701–02 (Tex. App.—Dallas 2002, no pet.) (mailbox rule cannot apply to extend statutory deadline for filing appeal found in Texas Civil Practice and Remedies Code). Because the plain language of Section 27.008(c) provided a specific deadline by which to appeal, we find that the notice of cross-appeal was untimely filed. *See Valerus Compression Servs. v. Reeves Cnty. Appraisal Dist.*, No. 08-13-00366-CV, 2014 WL 645035, at *1 (Tex. App.—El Paso Feb. 19, 2014, no pet.) (mem. op.) (even when appellant's notice of appeal is timely filed, an untimely-filed cross-appeal must be dismissed); *Charette v. Fitzgerald*, 213 S.W.3d 505, 509 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Our conclusion is not altered by the fact that Section 27.008(c) was repealed. "A statute is presumed to be prospective in its operation unless expressly made retrospective." TEX. GOV'T CODE ANN. § 311.022 (West 2013). Section 6 of House Bill 2935, which repealed Section 27.008(c), stated, "This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2013." Act of May 21, 2011, 82d Leg., R.S., ch. 1042, § 6, 2013 Tex. Gen. Laws 2499, 2500. The bill received the required votes on May 24, 2013, and became effective on that date. *See Jardin v. Marland*, 431 S.W.3d 765, 768–69 (Tex. App.—Houston [14th Dist.] 2014, no pet.). "The

24

amended act does not provide for retroactive application." *Miller v. Weisbroad*, No. 08-12-00278-CV, 2014 WL 6679122, at \*6 (Tex. App.—El Paso Nov. 25, 2014, no pet.). Although the prohibition against retroactive application of laws does not necessarily apply to procedural or jurisdictional statues, "[p]rocedural, remedial, and jurisdictional laws should be enforced as they exist at the time the judgment is rendered." *Kinney v. BCG*, No. 03-12-00579-CV, 2014 WL 1432012, at \*4 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.)); *but see Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 547 (Tex. 2010). Because the new statutory scheme was not enacted until after the trial court rendered its judgment and after this Court received the notice of cross-appeal, we will not address the merits of the cross-appeal.

Moreover, if we were to apply the new statutory scheme to this appeal, all of the parties in this case would have generally had twenty days to file a notice of appeal, and both the appellant's and appellees' notices of appeal would have been untimely. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12); TEX. R. APP. P. 26.1(b), 26.3; *see Spencer v. Pagliarulo*, 448 S.W.3d 605, 606–07 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (discussing shorter deadlines under current rules).

Because the cross-appeal was untimely filed, we dismiss it under Rule 25.1(b) of the Texas Rules of Appellate Procedure.

**VII. Conclusion**

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:  June 5, 2015
Date Decided:  August 11, 2015